GARY E. KLAUSNER (State Bar No. 69077)
gklausner@stutman.com
SCOTT H. YUN (State Bar No. 185190)
syun@stutman.com
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone:   (310) 228-5600
Facsimile:   (310) 228-5788

CLARK K. TAYLOR (State Bar No. 182438)
ctaylor@vancott.com
VAN COTT, BAGLEY CORNWALL & McCARTHY, P.C.
36 South State Street, Suite 1900
Salt Lake, Utah 84111
Telephone:   (801) 237-0425
Facsimile:   (801) 237-0888

Attorneys for ASC Utah, LLC

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Case No. 2:11-bk-30162-PC |
| | ) |
| | ) Chapter 11 |
| WOLF MOUNTAIN RESORTS, L.C., a Utah limited liability company, | ) **EMERGENCY MOTION FOR ORDER: (1) DISMISSING THE CHAPTER 11 CASE PURSUANT TO SECTIONS 305(a) AND 1112(b) OF THE BANKRUPTCY CODE; (2) BARRING THE DEBTOR FROM REFILING FOR BANKRUPTCY FOR 90 DAYS PURSUANT TO SECTIONS 105(a) AND 349(a) OF THE BANKRUPTCY CODE;  OR (3) IN THE ALTERNATIVE, FOR ORDER FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362** |
| Debtor. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) <u>Hearing</u> |
| | ) |
| | ) Date:   May 17, 2011 |
| | ) Time:   11:00 a.m. |
| | ) Place:  Courtroom 1539 |
| | )              255 E. Temple Street |
| | )              Los Angeles, CA 90012 |

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ..............................................................................................5

II.   STATEMENT OF FACTS ...............................................................................7

    A.    The Debtor Wrongfully Conveyed Property to Insiders and Filed
        Bankruptcy in California to Avoid a $55 million Verdict in Utah. ....................7

    B.    The Debtor's Chapter 11 Filing is Simply One More in a Long
        Line of Litigation Tactics.............................................................................10

    C.    The Debtor Lacks Good Faith Reasons to Seek Relief Under
        Chapter 11 of the Bankruptcy Code, Especially in California..........................12

III.  ARGUMENT ..................................................................................................15

    A.    The Court Should Dismiss The Debtor's Chapter 11 Case Because
        It Was Not Filed In Good Faith. ....................................................................15

    B.    If The Court Dismisses the Debtor's Chapter 11 Case, It Should be
        Dismissed With a Bar Against Refiling for 90 Days.......................................18

    C.    If The Court Does Not Dismiss The Debtor's Chapter 11 Case,
        Then The Court Should Grant ASCU Relief From Stay. ..................................19

IV.   CONCLUSION................................................................................................20

1

## TABLE OF AUTHORITIES

2

**CASES**

3

In re Boynton,
    184 B.R. 580 (Bankr. S.D. Cal. 1995) ................................................................. 14

4

5

In re Byrd,
    172 B.R. 970 (Bankr. W.D. Wash. 1994) ........................................................... 15

6

In re Case,

7
    198 F.3d, 327 (2d Cir. 1999) ............................................................................... 17

8

Chu v. Syntron Bioresearch, Inc. (In re Chu),
    253 B.R. 92 (S.D. Cal. 2000) .............................................................................. 15

9

10

In re Davis,
    93 B.R. 501 (Bankr. S.D. Tex. 1987) ................................................................ 15

11

12

In re Harvey,
    101 B.R. 250 (Bankr. D. Nev. 1989) .................................................................. 15

13

Idaho v. Arnold (In re Arnold),
    806 F.2d 937 (9th Cir. 1986) ......................................................................... 14, 18

14

15

In re Karum Group,
    66 B.R. 436 (Bankr. W.D. Wash. 1986) ........................................................... 15

16

Leavitt v. Soto (In re Leavitt),

17
    209 B.R. 935 (B.A.P. 9th Cir. 1997) .................................................................. 17

18

Marsch v. Marsch (In re Marsch),
    36 F.3d 825 (9th Cir. 1994) ........................................................................... 14, 15

19

20

In re Powers,
    135 B.R. 980 (Bankr. C.D. Cal. 1991) .............................................................. 18

21

22

In re Sparklet Devices, Inc.,
    154 B.R. 544 (Bankr. E.D. Mo. 1993) .............................................................. 15

23

United Enters. v. ACI Sunbow, LLC (In re ACI Sunbow, LLC),
    206 B.R. 213 (Bankr. S.D. Cal. 1997) .............................................................. 18

24

25

In re Wally Findlay Galleries, Inc.,
    36 B.R. 849 (Bankr. S.D.N.Y. 1984) ................................................................ 15

26

In re Yukon Enterprises, Inc.,

27
    39 Bankr. 919, 921 ............................................................................................ 18

28

**STATUTES**

11 U.S.C. § 305(a) ..................................................................................................2, 6, 14
11 U.S.C. §349(a) ........................................................................................................2, 17
11 U.S.C. § 362(d) .............................................................................................................18
11 U.S.C. § 1112(b) ....................................................................................................2, 6, 14

**RULES**

LBR 9075-1(a), ......................................................................................................................2
LBR 9075-1(b), ......................................................................................................................2

1    **TO THE HONORABLE PETER CARROLL, UNITED STATES BANKRUPTCY**

2    **JUDGE:**

3      ASC Utah, LLC ("ASCU"), the largest creditor of Wolf Mountain Resorts, L.C.

4    (the "Debtor" or "Wolf Mountain"), respectfully submits this "Emergency Motion for Order: (1)

5    Dismissing the Chapter 11 Case Pursuant to Sections 305(a) and 1112(b) of the Bankruptcy

6    Code; (2) Barring the Debtor from Refiling for Bankruptcy for 90 Days Pursuant to Sections

7    105(a) and 349(a) of the Bankruptcy Code; or (3) in the Alternative, for Relief from the

8    Automatic Stay" (the "Motion").

9    **DATE AND TIME OF THE HEARING**

10      ASCU requested, pursuant to Local Bankruptcy Rule ("LBR") 9075-1(b), that the

11    Court schedule a hearing on the Motion on an emergency basis. The Court granted ASCU's

12    request and scheduled a hearing on the Motion for <u>May 17, 2011 at 11:00 a.m.</u> Pursuant to the

13    Court's instructions, ASCU will provide telephonic and written notice of the hearing (the "Notice

14    of Hearing") on the Debtor's bankruptcy counsel and the Office of the United States Trustee

15    ("UST") shortly after this Motion is filed on May 13, 2011. ASCU will serve copies of the

16    Motion and the Notice of the Hearing on the Debtor, the Debtor's bankruptcy counsel, UST, and

17    the 20 largest unsecured creditors by overnight mail. A copy of the Notice of Hearing will also

18    be served by first class mail on all creditors as required by Rule 2002 of the Federal Rules of

19    Bankruptcy Procedure.

20      Pursuant LBR 9075-1(a)(7), any response, written or oral, to the Motion may be

21    presented at the time of the hearing on the Motion.

22    **THE NEED FOR AN EMERGENCY HEARING**

23      As set forth in further detail in the attached Memorandum of Points and

24    Authorities and the accompanying declarations, an expedited hearing on the Motion is required

25    because a prejudgment writ of attachment and restraining order issued by the Third Judicial

26    District Court in Summit County, State of Utah (the "Utah State Court") in favor of ASCU and

27    against the Debtor and on parcels of real estate that the Debtor purportedly transferred to insiders

28

1   *expires on May 19, 2011 at 8:30 a.m.*  The prejudgment writ of attachment and restraining order

2   were necessary because the Debtor, shortly after a jury returned a special verdict against the

3   Debtor in the approximate amount of $55 million, purported to convey by way of a backed-dated

4   deeds to its own members four parcels of real property owned by the Debtor.  The Utah State

5   Court issued the prejudgment writ of attachment and restraining order to prohibit the members of

6   the Debtor from making any further transfers of or encumbrances against the Debtor's property

7   because it found that the Debtor may attempt additional transfers of assets, which would

8   irreparably harm ASCU.  A hearing on the instant Motion is required before May 19, 2011 so

9   that, if the Motion is granted, ASCU will have enough time to seek the extension of the

10   prejudgment writ of attachment and restraining order from the Utah State Court.

11        In addition to the pending expiration of the prejudgment writ of attachment and

12   restraining order, the judge who presided over the seven week jury trial between ASCU and the

13   Debtor is stepping down from the bench in July 2011.  As explained in further detail below, this

14   case is a classic two party dispute that does not belong in a chapter 11 bankruptcy.  The Debtor

15   has no business operations, other than the collection of rent from ASCU, does not have

16   employees, and has very few other legitimate creditors.  It would be an enormous waste of the

17   parties' and judicial resources to allow any further delay of what is basically a two party dispute

18   in the Utah State Court and which is on the verge of entering final judgment after five years of

19   litigation.

20        This Motion is based on the Memorandum of Points and Authorities below, the

21   accompanying Declaration of Kara Pettit (the "Pettit Declaration") and the Declaration of

22   Christie Babalis (the "Babalis Declaration"), the record in this case, and the arguments, evidence

23   and representations that may be presented at or prior to the hearing on this Motion.

24   ///

25   ///

26   ///

27

28

1    **WHEREFORE**, based on the facts and authorities set forth herein, ASCU

2  respectfully requests that the Court enter an order dismissing the Debtor's chapter 11 case, with a

3  bar against refiling for 90 days or, in the alternative, granting relief from the automatic stay, to

4  allow ASCU to return to the Utah Court and seek an extension of the prejudgment writ of

5  attachment and restraining order, and to conclude matters related to the recently-concluded seven

6  week jury trial including entry of a final judgment against the Debtor.

7

8  Dated:  May 13, 2011                    /s/ Scott H. Yun
9                                          GARY E. KLAUSNER, and
10                                         SCOTT H. YUN, Members of
                                           STUTMAN, TREISTER & GLATT
11                                         PROFESSIONAL CORPORATION

12                                         and

13                                         CLARK K. TAYLOR
14                                         VAN COTT, BAGLEY CORNWALL &
                                           McCARTHY, P.C.
15                                         Attorneys for ASC Utah, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

This case represents a veritable poster child for bad faith chapter 11 filings. Chapter 11 was created for businesses and individuals who need protection while they reorganize their business affairs and attempt to restructure their debts.  Chapter 11 is not a safe haven for parties who have concealed assets, who have no business to reorganize, and who are simply attempting to use the bankruptcy process to forum shop and avoid adverse rulings by other courts.  This is such a case.

The Debtor filed this bankruptcy on the heels of a special jury verdict finding the Debtor liable to ASCU in the approximate amount of $55 million.  The Debtor's response to the jury verdict was to refuse to sign a proposed stipulation to preserve its assets pending further court proceedings, and to immediately initiate a fraudulent transfer of valuable real property to its principals.  Upon being advised of such transfer, the Utah State Court issued forthwith a prejudgment writ of attachment and restraining order to prevent the Debtor from making further transfers.  The prejudgment writ expires on May 19, 2011.

The Debtor has not filed this case for any legitimate reorganization purpose; indeed, the Debtor has no business to reorganize, no employees and no real assets, with the exception of certain real property subject to a ground lease (the "Ground Lease") in favor of ASCU.  The Debtor has no reorganization plan or reorganization prospects and has filed a barebones emergency bankruptcy petition purely and simply as a ploy to avoid further proceedings before the Utah State Court.  The Debtor's bad faith in filing this case is an extension of outrageous and vexatious conduct before the Utah State Court during which, among other things, the Debtor: (1) attempted to "shop judges" by serially moving to recuse and disqualify judges, (2) attempted to remove the Utah State Court Action to federal court four

1    years into litigation, which attempt was denied, and (3) brought multiple motions to compel

2    arbitration after years of litigating the case, all of which were denied.

3          The Debtor's filing of this chapter 11 case in the Central District of California has

4    absolutely no legitimacy.  Substantially all of the Debtor's assets are located in Utah, the Debtor's

5    voluntary petition reflects that substantially all of its creditors are in Utah, and the Debtor has no

6    connection to the State of California except that one of its principals lives in Los Angeles,

7    although he also appears to maintain a residence in Utah.

8          Immediate relief from this Court is necessary to enable the ASCU to return to the

9    Utah State Court to complete the pending litigation, obtain entry of a final judgment, enforce the

10    judgment, and, most importantly, to obtain orders from the Utah State Court preventing the

11    further dissipation and destruction of valuable assets before the existing prejudgment writ of

12    attachment and restraining order expire on May 19, 2011 at 8:30 a.m.  Unless further action is

13    taken by the Utah State Court, the very real potential exists for properties subject to the writ of

14    attachment (title to which is technically now held by third parties) to be further transferred or

15    encumbered.  Also creating the immediacy for this Court to act is the fact that Presiding Judge

16    Robert K. Hilder of the Utah State Court, who has been handling that 5 year case and who

17    presided over the seven week jury trial, is retiring in July, 2011 and is trying to expeditiously

18    wrap up a number of post-trial issues.  Unless ASCU can immediately return to the Utah State

19    Court, ASCU may not be able to complete the pending post-trial matters and obtain all of the

20    relief to which it is entitled before Judge Hilder retires, which is Debtor's goal.  At that point,

21    any further action by the Utah State Court will be delayed indefinitely.

22          For the reasons demonstrated herein, the Court should exercise its discretion

23    under Bankruptcy Code Sections 305(a) and 1112(b) and dismiss this case immediately with a

24    bar against refiling for 90 days. In the alternative, this Court should order immediate relief from

25    the automatic stay to permit the continued prosecution, to conclusion, of all post-trial matters

26    pending in the Utah State Court.

27

28

1

## II.

2

## STATEMENT OF FACTS

3
4

**A.    The Debtor Wrongfully Conveyed Property to Insiders and Filed
Bankruptcy in California to Avoid a $55 million Verdict in Utah.**

5    On July 3, 1997, the Debtor sold what was then known as the Wolf Mountain Ski

6  Resort in Park City, Utah to ASCU.  ASCU purchased outright most of the Debtor's assets (other

7  than real property) via a Purchase and Sale Agreement, and the parties also simultaneously

8  executed a Ground Lease Agreement whereby the land the Debtor held in fee was leased to

9  ASCU for up to 200 years, with an exclusive option for ASCU to acquire the land as ASCU

10  developed what became known as The Canyons resort.

11    In June 2006, ASCU was forced to seek court intervention against the Debtor

12  ("Utah State Court Action") before the Utah State Court to prevent the Debtor from unlawfully

13  terminating the Ground Lease.  On June 28, 2006, the Utah State Court issued an injunction

14  prohibiting the Debtor from issuing any notices of termination.  ASCU thereafter also sought

15  damages from the Debtor for breach of contract and intentional interference with economic

16  relations.  Contentious litigation ensued for almost five years, culminating in a seven-week jury

17  trial beginning on March 8, 2011, and resulting in the jury rendering a special verdict on April

18  26, 2011 in favor of ASCU on all claims.  The jury's special verdict awarded ASCU almost $55

19  million against the Debtor.  *See* Jury's Special Verdict attached as Exhibit "1" to the Pettit

20  Declaration.

21    Because of past conduct and suspicions that the Debtor would attempt to convey

22  assets to avoid execution of judgment, on April 28, 2011 ASCU sent to Debtor's counsel a

23  proposed stipulation and order to not transfer or encumber Debtor's property.  On May 3, 2011,

24  ASCU's counsel sent an email to advise the Utah State Court of the status of the judgments, sent

25  drafts of the judgments to the Utah State Court and opposing counsel, and informed the Utah

26
27
28

1  State Court of ASCU's request to the Debtor to agree to not convey or transfer property in light

2  of the jury's verdict.

3          Instead of agreeing or responding to the substance of the request in any way,

4  ASCU discovered that on May 2, 2011, the Debtor's counsel in Texas, the law firm of Hirsch &

5  Westheimer, caused to be recorded a backed-dated and purported Warranty Deed allegedly

6  conveying four parcels of property to the Debtor's own members, Michael A. Baker and Wasatch

7  Capital Corporation. *See* Warranty Deed attached as Exhibit "2" to the Pettit Declaration.

8  Notably, the Deed states it is "Dated effective **this** 3rd day of June, 2005"; however, the parcels

9  that are listed in the deed were not even owned by the Debtor on June 3, 2005, and the notary

10  attestation directly refutes this alleged effective date because it states that Mr. Griswold appeared

11  before the Notary and executed the deed on *May 2, 2011*, not June 3, 2005.  Moreover, the legal

12  description in the Deed states it is "less and excepting the real property (i) conveyed by that

13  certain declaration dated *October 19, 2006* … and (ii) quitclaim deed and reservation of

14  easement dated *October 21, 2009* … as modified by that first addendum … dated *January 27,*

15  *2010…*" (emphasis added).   Hence, on its face, the alleged transfer simply could not have an

16  effective date of June 3, 2005 and the attempted backdating by the Debtor further demonstrates

17  an intent to defraud.

18          On May 4, 2011, upon learning of the purported conveyance of property to

19  insiders, ASCU immediately sought, and on May 5, 2011 obtained, orders from the Utah State

20  Court precluding further conveyances and authorizing a prejudgment writ of attachment not only

21  on the Debtor's property, but also on the parcels purportedly conveyed to Debtor's insiders on

22  May 2, 2011.  The Court found that issuance of those orders on an *ex parte* basis was warranted

23  because ASCU demonstrated that it was justly apprehensive that the Debtor may transfer

24  additional assets, which would irreparably harm ASCU because the primary, if not sole, asset of

25  the Debtor is the real property that is subject to the Ground Lease and property that comprises an

26  adjacent anticipated 35-lot subdivision that was the subject of the May 2, 2011 Warranty

27  Deed to the Debtor's insiders.  The Court also ordered a valuation of the Debtor's assets and

28

1    prohibited the Debtor or its members from making any further transfers of or encumbrances to its

2    property. ***The prejudgment writ of attachment expires on May 19, 2011 at 8:30 a.m.***

3          On May 9, 2011 at 1:30 Pacific Standard Time, the parties were scheduled to and

4    did appear before Presiding Judge Hilder in the Utah State Court.  One of the items to be

5    discussed with the State Court was finalization of the judgment on the jury's special verdict,

6    drafts of which had been routed to counsel on May 3, 2011.  At 1:33 Pacific Standard Time, the

7    Debtor filed its voluntary petition with this Court.  The Debtor's Utah litigation counsel was

8    carefully monitoring his cell phone, and upon receipt of a message informing him of the

9    bankruptcy filing in this Court, he immediately announced the same to all present in the Utah

10    State Court, thereby halting any action from being taken at the hearing.

11          Another exigent circumstance is presented in this matter because the judge who

12    presided over the seven-week jury trial, and who prior to trial considered and ruled upon more

13    than nineteen summary judgment motions and pretrial motions on approximately forty

14    evidentiary issues, is stepping down from the bench in July 2011.  Numerous post-trial items are

15    pending and remain to be finalized, including, without limitation:  1) finalization of the judgment

16    upon the special verdict that was rendered on April 26, 2011 on ASCU's and the Debtor's claims

17    following the seven-week trial, including the award of attorneys' fees, costs, and interest allowed

18    under Utah law, as well as rendering the judgment final under Rule 54(b) of the Utah Rules of

19    Civil Procedure; 2) determination of certain equitable claims based upon the evidence presented

20    during the seven-week trial, or based upon evidence which was presented to the State court via

21    summary judgment motions prior to May 9, 2011; 3) extension of the prejudgment writ of

22    attachment issued on May 5, 2011 so that it can continue in effect until further order of the

23    United States Bankruptcy Court (prior to the stay, the Utah State Court had set a hearing on this

24    item for May 19, 2011 at 8:30 a.m. Mountain Time); and 4) ruling on motions that were filed

25    before May 9, 2011, but have not yet been determined, including a Motion for Rule 11 Sanctions

26    based upon the Debtor's serial attempts to disqualify judges in the State Court matter.

27

28

**B.** **The Debtor's Chapter 11 Filing is Simply One More in a Long Line of Similar Litigation Tactics.**

The Utah State Court Action has had a torturous history, due to the Debtor's concerted efforts to impede the case and prevent ASCU's claims from ever reaching trial. Getting the case to trial was extraordinarily taxing, and required monumental efforts and the dedication of remarkable resources by the judiciary and the parties. As the Presiding Judge of the Third Judicial District stated in denying one of the Debtor's three motions to compel arbitration filed in the matter:

> This case has proven to be one of the greatest consumers of the resources of the Third Judicial District in many years. The litigation has consumed years of intensive court involvement, voluminous motion practice, extensive discovery, and even substantial physical resources as basic as paper, copy toner, and storage space. This consolidated case comprises more file volumes than any presently pending case in this District that serves more than one million citizens of this state. It is also now on its third judge and fourth or fifth law clerk ... the point is that court resources have already been consumed almost to exhaustion.

Ruling and Order Denying Arbitration dated November 20, 2010 at 6, a copy of which is attached as Exhibit "1" to the Request for Judicial Notice.

The litigation and delay tactics employed by the Debtor in the Utah State Court Action include: two motions to disqualify trial court judges, followed by the threat of a third such motion to disqualify which the Debtor ultimately did not have to file because another party aligned with Debtor, the Osguthorpes[1], filed it instead, arguing that Judge Hilder was biased against the Debtor because property he owned in Summit County would decrease in value if the Debtor prevailed; three motions to compel arbitration and three interlocutory appeals with stay requests to the Utah Supreme Court after the trial court denied the motions; and one removal to federal court in August 2010, after the matter had been litigated in Utah State Court for more than four years.

---

[1] The Osguthorpes have acknowledged that they and the Debtor are working toward the common goal of ousting ASCU, the current owner and operator of The Canyons ski resort, from the property. *See Osguthorpe Combined Petition in Case No. 20100986SC* at 4.

1       The strategic timing and dilatory nature of the Debtor's multiple motions to

2   compel arbitration poignantly illustrate just one aspect of Debtor's ongoing obstructionist tactics.

3   For example, the Debtor's first motion to compel arbitration followed its failed attempt to derail

4   the case by seeking to add eleven new parties to the litigation without leave of court after the

5   case had been pending for almost three years, and with less than three months left in the fact

6   discovery period.  In denying this first attempt to compel arbitration, the Utah State Court stated:

7   "Allowing Wolf to assert its rights to arbitration this late in the case would prejudice the ASC

8   Parties because they have spent three years participating in highly contested litigation . . . .  The

9   reasons Utah courts favoring [sic] arbitration, expedience and conservation of resources, would

10  be largely defeated by conducting arbitration this late.  Wolf has waived its right to arbitration by

11  its actions up to this juncture, and its Motion to Compel Arbitration should be denied."  Ruling

12  and Order dated June 26, 2009, at 29-30, a copy of which is attached as Exhibit "2" to the

13  Request for Judicial Notice.  Stated differently, "Wolf has . . . tested the judicial waters and

14  found them bitter and is thus seeking arbitration."  Ruling and Order dated August 11, 2009, at

15  17, a copy of which is attached as Exhibit "3" to the Request for Judicial Notice.

16      Ultimately, the Utah Supreme Court upheld the denial of the Debtor's first motion

17  to compel arbitration by an unusual procedure of issuing an Order of Affirmance in July 2010,

18  shortly after oral argument, with the full opinion to be issued later.[2]  The Utah Supreme Court

19  did this in order to allow the then-scheduled October 2010 trial to be able to proceed.[3]

20      Eventually, after the two rounds of Debtor's disqualification motions, and after the

21  Debtor's failed attempt at removal to Federal Court, the presiding Judge of the Third Judicial

22  District, Judge Robert K. Hilder, assigned the case to himself to ensure the case would actually

23  get to trial.  In December 2010, after the attempt to disqualify Judge Hilder failed and the

24  petition for extraordinary writ to the Utah Supreme Court was denied, Judge Hilder set the matter

25  _____
    [2] The Utah Supreme Court issued its full opinion in November 2010.
26  [3] The October 2010 trial had to be postponed due in part to the Debtor's attempt to remove the entire case to Federal
    court in August/September 2010.  The filing of the removal automatically stayed the Utah State Court Action until
27  the Federal Court had the chance to hear oral argument on the motion to remand filed by ASCU within a week of
    removal.  The Federal Court granted ASCU's motion to remand at oral argument on September 23, 2010.
28

1  for trial in January 2011 and took on the immense task of hearing oral argument and ruling upon

2  the more than nineteen summary judgment motions that remained pending in the wake of

3  Debtor's numerous recusal motions and other delay tactics.  The trial finally went forward on

4  March 8, 2011.

5  **C.    The Debtor Lacks Good Faith Reasons to Seek Relief Under Chapter 11 of
       the Bankruptcy Code, Especially in California.**

6

7          The Debtor has not maintained ongoing business operations since selling the

8  resort to ASCU in 1997.  The Debtor has not maintained employees since it ceased resort

9  operations, and its primary, if not sole, source of revenue is the rent paid to it by ASCU pursuant

10  to the Ground Lease Agreement.  The Debtor does not have any physical office space, and a

11  Texas law firm is designated recipient for notices under the Ground Lease, including the location

12  to which the rent checks are sent.

13          The Debtor is a Utah limited liability corporation and lists the address of The

14  Canyons resort in Park City, Utah as its principal place of business in its filings with the Utah

15  Division of Corporations.  The Debtor is comprised of primarily two principals:  Kenneth

16  Griswold and Michael Baker; although their membership interests may be held by or through

17  entities they have formed, such as Wasatch Capital Corporation.  Mr. Griswold maintains

18  residences in both Park City, Utah and Los Angeles, California.  At the preliminary injunction

19  hearing in the Utah State Court Action in June 2006, Mr. Griswold testified that he considered

20  himself a resident of Utah, not California.  However, when ASCU challenged the basis for

21  diversity jurisdiction in a Federal court action filed by the Debtor in 2008, raising claims that

22  partially were, and should have been, alleged in the Utah State Court Action, Mr. Griswold

23  testified that he formed the intent to change residences from Utah to California sometime in the

24  fall of 2006.

25          Mr. Baker resides in Texas, but formerly resided in Park City, Utah.  ASCU is not

26  aware of any connection that the Debtor has to California other than the fact that Mr. Griswold

27  purportedly resides there.

28

1    The Debtor has unsuccessfully attempted to use Mr. Griswold's purported

2    California residency on two prior occasions to invoke the jurisdiction of California courts for

3    disputes in an attempt to avoid Utah courts. In both instances, the California courts declined to

4    exercise jurisdiction or venue. The Debtor has once again played fast and loose with jurisdiction

5    by changing its address with the Utah Division of Corporations & Commercial Code from The

6    Canyons ski resort address to Mr. Griswold's personal home address in California on May 5,

7    2011, just 4 days before the petition date in its latest attempt to evade the Utah courts by filing

8    for bankruptcy in the Central District of California[4]. *See* Exhibit "3" to the Pettit Declaration.

9    The Debtor is once again attempting to avoid the Utah court system by

10   deliberately attempting to mislead this Court into thinking that it has a myriad of unsecured

11   creditors located in places other than Utah. For instance, the Debtor lists "ASC Utah, Inc." as its

12   largest unsecured creditor, with a purported agent in Maine. As Debtor is well-aware, after all of

13   the capital stock of ASCU was sold in June 2008, ASCU effected a change in corporate form,

14   whereby ASCU became a limited liability company, with its principal place of business in Utah

15   and its registered agent in Utah. Similarly, the Debtor spuriously lists Park City West &

16   Associates, another creditor on the 20 largest unsecured list, as having a mailing address in

17   California and a contact in Virginia, when the Debtor knows full well that the entity is based in a

18   Utah, with its primary contacts in Utah.

19   Moreover, the list of alleged unsecured creditors does not reflect legitimate debt

20   of the Debtor. For instance, the second largest unsecured creditor listed, DA Osguthorpe Family

21   Partnership, does not have any claim even pending against the Debtor, much less one that has

22   been alleged to be in the amount of $40 million. In July 2010, Osguthorpe supplemented its

23   complaint to allege a claim against both the Debtor and ASCU under the SPA Development

24

25   [4] Despite the clear attempt by the Debtor to gerrymander a venue for its bankruptcy case in Los Angeles, ASCU
     does not believe that the transfer of the chapter 11 case to the District of Utah is the appropriate remedy at this time.
26   As a practical matter, a venue transfer, even after it is granted, takes time to implement, which ASCU does not have
     due to the upcoming expiration of the prejudgment writ of attachment and restraining order and the retirement of
27   Judge Hilder in July, 2011. A transfer of venue may actually work to the Debtor's advantage by further delaying the
     conclusion of the Utah State Court Action.

28

1   Agreement in the Utah State Court Action, but then sought to compel that claim, as well as the

2   ones between the Debtor and ASCU that had been litigated since 2006, into arbitration.  The

3   Osguthorpe motion to compel arbitration was denied and the claims were dismissed.  As

4   aforementioned, the Osguthorpes' interests are aligned with the Debtor in the Utah State Court

5   Action, in that both were attempting to oust ASCU from property upon which The Canyons ski

6   resort operates.[5]

7          The bulk of the remaining purported unsecured creditors are either actually

8   creditors of, or disputes related to, ASCU, not the Debtor, or are amounts owed to professionals

9   for litigation services.  For instance, ASCU, and not the Debtor, pays the property taxes to

10  Summit County on the Debtor's property that is subject to the Ground Lease.  Similarly, the

11  construction liens relate to disputes involving ASCU, not the Debtor, for work at The Canyons

12  resort.  Moreover, at least three of those liens have been release.  Lastly, the following listed

13  unsecured creditors are professionals who provided litigation services to the Debtor in the Utah

14  State Court Action:  Kirton & McConkie; Stone and Magnanini; Sage Forensic Accounting;

15  Moore & Associates; Vicky Fitlow; and Troy Vincent Golf Course Designs.

16         It should also be noted that the Debtor filed a barebones and misleading voluntary

17  petition package, and since the petition date, has not filed any motion or application seeking

18  relief.  The lack of activity on the part of the Debtor is probative of the fact that it does not have

19  an operating business, employees or a legitimate purpose to be in bankruptcy, other than to avail

20  itself of the automatic stay to delay the remaining matters pending in the Utah State Court Action

21  and avoid judgment.

22

23  [5] Two specific examples of how this alignment of interest played out in the Utah courts are:  1) the Debtor raised a
    concern that Presiding Judge Hilder had a conflict of interest because he owned property in Summit County within a
24  few miles of The Canyons resort; however, it was the Osguthorpes' that filed the disqualification motion arguing
    that Judge Hilder would be biased against the Debtor because if the Debtor prevailed, the Judge's property value
25  would decrease; and 2) the Osguthorpes filed an eviction action against both ASCU and the Debtor to prevent
    ASCU from maintaining resort operations on portions of the Osguthorpe land.  ASCU filed a motion to dismiss the
26  action because the easement granted by the Osguthorpes was not the type of interest that was subject to unlawful
    detainer.  The Debtor, on the other hand, eagerly admitted that both it and ASCU were properly subject to the
27  unlawful detainer action.  Ultimately, the Utah Supreme Court upheld the dismissal that ASCU secured of the claims
    against it as well as the Debtor.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### ARGUMENT

A.    **The Court Should Dismiss The Debtor's Chapter 11 Case Because It Was Not Filed In Good Faith.**

Section 1112(b) of the Bankruptcy Code requires that, absent "unusual circumstances" or in the case of certain narrowly defined exceptions (not applicable here), a court "*shall*" dismiss a chapter 11 case if the movant establishes cause. 11 U.S.C. § 1112(b). A court may also dismiss a case pursuant to Section 305(a) of the Bankruptcy Code if "the interests of creditors and the debtor would be better served by such dismissal". 11 U.S.C. § 305(a)(1).

The Ninth Circuit Court of Appeals has recognized that "a lack of good faith in filing a chapter 11 petition establishes cause for dismissal." Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994) (affirming bankruptcy court's dismissal of chapter 11 case for bad faith based on finding that debtor filed chapter 11 petition solely to delay collection of a restitution judgment and avoid posting an appeal bond). As summed up by one bankruptcy court in the Ninth Circuit, "the established rule is that the determination of good faith depends upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and local financial realities." In re Boynton, 184 B.R. 580, 583 (Bankr. S.D. Cal. 1995) (granting dismissal motion where debtor appeared unable to post appeal bond) (citation omitted).

Whether good faith exists "depends on an amalgam of factors and not upon a specific fact," and "the test is whether a debtor is attempting to unreasonably deter and harass creditors or is attempting to effect a speedy, efficient reorganization on a feasible basis." Id. (quoting Idaho v. Arnold (In re Arnold), 806 F.2d 937, 939 (9th Cir. 1986)). Factors often considered by courts when determining whether to dismiss a debtor's case for lack of good faith include: (1) the debtor has only one primary asset; (2) the debtor engaged in improper pre-petition conduct; (3) the debtor can identify only a few unsecured creditors; (4) the debtor's asset is subject to execution; (5) the debtor and a single creditor proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

1    (6) the filing of the petition effectively allows the debtor to evade court orders; (7) the debtor has

2    no ongoing business or employees; and (8) the lack of possibility of reorganization. See Chu v.

3    Syntron Bioresearch, Inc. (In re Chu), 253 B.R. 92, 95 (S.D. Cal. 2000) (citing authorities).

4              It is well-established that a debtor abuses the bankruptcy process when it appears

5    that the primary or sole purpose for filing for bankruptcy appears be to avoid the consequences

6    of an adverse state court decision. In re Sparklet Devices, Inc., 154 B.R. 544, 548 (Bankr. E.D.

7    Mo. 1993). This fact pattern routinely results in a dismissal of the debtor's case. See, e.g.,

8    Marsch, 36 F.3d at 828; In re Byrd, 172 B.R. 970 (Bankr. W.D. Wash. 1994) (dismissing case

9    for bad faith); In re Harvey, 101 B.R. 250 (Bankr. D. Nev. 1989) (same); In re Karum Group, 66

10   B.R. 436 (Bankr. W.D. Wash. 1986) (dismissing case of debtor whose sole purpose for filing

11   was to avoid bond requirement where amount of judgment vastly exceeded value of debtor's

12   assets); In re Davis, 93 B.R. 501 (Bankr. S.D. Tex. 1987) (dismissing case of debtor who failed

13   to show honest intent to reorganize and admitted that filing bankruptcy was his only alternative

14   to posting a supersedeas bond); In re Wally Findlay Galleries, Inc., 36 B.R. 849 (Bankr.

15   S.D.N.Y. 1984) (dismissing case based on finding that using bankruptcy process "not to

16   reorganize, but to relitigate" is an impermissible use of chapter 11).

17             The clear record in this case demonstrates ample cause for dismissal. Even before

18   the Debtor turned to bankruptcy as its latest ploy, it engaged in almost five years of ongoing

19   delay tactics before the Utah State Court, including multiple motions to disqualify judges,

20   motions to compel arbitration, and the attempted removal of the Utah State Court Action to the

21   federal court, all of which were denied or failed because they lacked merit. Having fully

22   exhausted this arsenal of obstructionist endeavors in the Utah State Court Action, the Debtor

23   employed its bankruptcy filing only after a five years of litigation jury returned a special verdict

24   in ASCU's favor at the conclusion of a seven week trial and on the eve of entry of judgment. It

25   cannot be disputed that the sole reason for the Debtor's bankruptcy filing was to obtain the

26   automatic stay to once again delay and postpone the conclusion the Utah State Court Action and

27   avoid judgment. The bad faith nature of the Debtor's conduct is exemplified by the timing of the

28

1   bankruptcy filing, which occurred at the very moment the presiding state court judge was about

2   to proceed with post-trial matters in open court, and as the expiration date of the prejudgment

3   writ of attachment and restraining order approached.

4          Moreover, the Debtor has *no ongoing business* and *no employees*. This is

5   evidenced by the Debtor's lack of any meaningful assets, other than the Ground Lease, which is

6   the subject matter of the Utah State Court Action. The lack of business activity is attested to by

7   the fact that the Debtor has not filed any motions to pay employees, fund business operations or

8   operate a business. Other than ASCU's claim of approximately $55 million, the Debtor also does

9   not have significant or legitimate claims. Although the Debtor now attempts by artifice to

10  concoct other creditors and claims, as set forth above, they are either invented or illusory, or are

11  related to professional fees arising from the Utah State Court Action. ASCU's claim, which was

12  the result of a seven week jury trial, dwarfs any other legitimate creditor claims that the Debtor

13  may actually have.

14         Furthermore, the Utah State Court Action that precipitated this chapter 11 filing

15  was itself the result of the Debtor's bad faith acts in unlawfully attempting to terminate the

16  Ground Lease and intentionally interfering with ASCU's economic relations. The Debtor's

17  conduct throughout the five year litigation and its recent purported attempts to convey assets to

18  its members by recording a back-dated deed immediately after the jury returned the verdict speak

19  volumes about the Debtor's lack of good faith and abundant evidence of bad faith.

20         The overwhelming weight of factors commonly considered by courts in assessing

21  a debtor's lack of good faith militate in favor of dismissing the Debtor's chapter 11 case. Indeed,

22  the Debtor's case falls squarely within the age-old paradigm of a judgment debtor's desperate

23  attempt to hide behind a bankruptcy filing to avoid the consequences of its actions. There is no

24  legitimate purpose to be served by the Debtor's chapter 11 case, and allowing this case to

25  proceed would only further the Debtor's transparent efforts to continue to hinder and delay the

26  conclusion of the Utah State Court Action and thereby obstruct ASCU's legitimate attempts to

27  recover for damages caused by the Debtor's intentional and unlawful actions. This Court should

28

17

1    not reward Debtor's bad behavior and should not provide a safe harbor for the Debtor's

2    misdeeds—it should dismiss the Debtor's chapter 11 case for cause based on the Debtor's lack of

3    good faith.

4         **B.      If The Court Dismisses the Debtor's Chapter 11 Case, It Should be Dismissed
     With a Bar Against Refiling for 90 Days.**

5

6         Courts have long held that a bankruptcy case may be dismissed with prejudice or

7    bar against refiling pursuant to Section 105(a) or Section 349(a) of the Bankruptcy Code. See In

8    re Case, 198 F.3d, 327, 340-42 (2d Cir. 1999); Leavitt v. Soto (In re Leavitt), 209 B.R. 935, 939

9    (B.A.P. 9th Cir. 1997). Specifically, Section 349(a) of the Bankruptcy Code states that a case can

10   be dismissed with prejudice for "cause". 11 U.S.C. §349(a). Although most of the cases dealing

11   with this subject matter arise out of consumer bankruptcy cases, the legal principal that debtors

12   who act in bad faith or abuse the bankruptcy process should be barred from refiling should also

13   apply in corporate or business cases.

14        In this case, as set forth above, there is overwhelming evidence of the lack of

15   good faith on the part of the Debtor in conducting itself in the Utah State Court Action and the

16   bad faith motive in filing for chapter 11. This bankruptcy case is nothing more than a sham to

17   further frustrate and delay ASCU's legitimate attempts to conclude the Utah State Court Action

18   and obtain a judgment against the Debtor. On the other hand, ASCU will likely suffer

19   irreparable harm if the Debtor is allowed to continue its campaign of forum shopping and delay.

20   As amply demonstrated by the Debtor's prior conduct in the Utah State Court Action, ASCU has

21   valid concerns that even if the Court dismisses this chapter 11 case, the Debtor will likely

22   attempt to race to file another bankruptcy case in Texas, Utah, or some other jurisdiction in its

23   never-ending quest to delay the Utah State Court Action. A refiling, however lacking in good

24   faith, simply buys the Debtor more time to avoid Judge Hilder and the Utah State Court, which is

25   ultimately the end game for the Debtor.

26        ASCU's concerns are not mere creditor speculation but are based on actual past

27   experiences with the Debtor's numerous attempts to remove the case, disqualify judges, compel

28

1    arbitration, and other egregious conduct. Combined that with the Debtor's most recent attempt to

2    transfer assets to insiders via a back-dated deed recorded within days of an adverse jury verdict,

3    which then necessitated issuance of the prejudgment writ of attachment and restraining order,

4    ASCU's concern that the Debtor will attempt to file bankruptcy again in some other jurisdiction

5    if this case is merely dismissed without a bar to further filings has solid foundation. Based on

6    these facts and their attendant circumstances, ASCU submits that more than sufficient "cause"

7    exists to dismiss this chapter 11 case with a bar prohibiting the Debtor from refiling for 90 days,

8    which should be sufficient time to return to the Utah State Court, wrap up the pending post-trial

9    issues and motions, and obtain a final judgment before Judge Hilder before he retires in July.

10        **C.**      **If The Court Does Not Dismiss The Debtor's Chapter 11 Case, Then The**

11              **Court Should Grant ASCU Relief From Stay.**[6]

12        Section 362(d)(1) of the Bankruptcy Code mandates that a court "shall grant relief

13    from stay . . . for cause." "It is well settled throughout the circuits, including the Ninth, that

14    'cause' for relief from stay under § 362(d)(1) may include a finding by the Court that debtor's

15    petition was filed in bad faith." In re Powers, 135 B.R. 980, 998 (Bankr. C.D. Cal. 1991) (citing

16    Idaho v. Arnold (In re Arnold), 806 F.2d 937, 939 (9th Cir. 1986) and other authorities). See

17    also In re Yukon Enterprises, Inc., 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984) (granting relief

18    from stay for cause based on finding that case was not filed in good faith); United Enters. v. ACI

19    Sunbow, LLC (In re ACI Sunbow, LLC), 206 B.R. 213, 217 (Bankr. S.D. Cal. 1997) (granting

20    relief from stay for cause where debtor had no business or going concern to preserve).

21        The record in this case provides ample support for this Court to dismiss the

22    Debtor's chapter 11 case, and the abundant evidence of bad faith on the part of the Debtor need

23    not be repeated here. However, if the Court is not inclined to dismiss the case at this juncture,

24    then the Court should grant ASCU relief from stay to return to the Utah State Court to seek

25    extension of the prejudgment writ of attachment and restraining order, and to conclude the Utah

26

27    [6] Due to the emergency nature of this Motion, ASCU requests that the Court waive the LBR requirement that a relief from stay motion be presented using the Court form.

28

1    State Court Action, including entry of a judgment based on the jury's special verdict.  As set

2    forth above, various post-trial matters were pending before the Utah State Court when the Debtor

3    filed this chapter 11 case in its further attempt to derail the State Court action and hinder ASCU.

4    The Utah State Court needs to attend to post-trial matters, rule on the pending post-trial motions,

5    including a pending motion to sanction the Debtor, and enter a final judgment.

6            The Utah State Court has presided over the litigation between ASCU and the

7    Debtor for nearly five years, and Judge Hilder himself has presided over the seven week jury

8    trial.  No other court and no other judge is more qualified to finish adjudicating ASCU's claim

9    against the Debtor and liquidate it to judgment than the Utah State Court and Judge Hilder.

10   Allowing the Debtor to use the bankruptcy case to stymie or relitigate the claims involved in the

11   Utah State Court Action would be an enormous waste of resources for the parties and the Court,

12   as well as extremely unfair and prejudicial to ASCU.  Further, if the Court is not inclined to

13   dismiss this chapter 11 case with a bar against refiling, ASCU urgently needs to return to the

14   Utah State Court to seek an extension of the prejudgment writ of attachment and restraining

15   order to prevent a likely further attempts by the Debtor and its insiders to transfer and hide the

16   Debtor's assets.

17                                                    **IV.**

18                                          <u>**CONCLUSION**</u>

19          **WHEREFORE**, based on the facts and authorities set forth herein, ASCU

20   respectfully requests that the Court enter an order dismissing the Debtor's chapter 11 case, with a

21   bar against refiling for 90 days or, in the alternative, granting relief from the automatic stay in

22   order to allow ASCU to return to the Utah State Court to conclude pending post-trial matters, ///

23   ///

24   ///

25

26

27

28

1 | obtain an extension of the prejudgment writ of attachment and restraining order, and obtain a

2 | final judgment against the Debtor.

3 |

4 | Dated: May 13, 2011                    /s/ Scott H. Yun
                                          GARY E. KLAUSNER, and
5 |                                       SCOTT H. YUN, Members of
                                          STUTMAN, TREISTER & GLATT
6 |                                       PROFESSIONAL CORPORATION

7 |                                       and

8 |                                       CLARK K. TAYLOR
                                          VAN COTT, BAGLEY CORNWALL &
9 |                                       McCARTHY, P.C.
                                          Attorneys for ASC Utah, LLC
10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |