GARY E. KLAUSNER (State Bar No. 69077)
gklausner@stutman.com
SCOTT H. YUN (State Bar No. 185190)
syun@stutman.com
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 228-5600
Facsimile: (310) 228-5788

CLARK K. TAYLOR (State Bar No. 182438)
ctaylor@vancott.com
VAN COTT, BAGLEY CORNWALL & McCARTHY, P.C.
36 South State Street, Suite 1900
Salt Lake, Utah 84111
Telephone: (801) 237-0425
Facsimile: (801) 237-0888

Attorneys for ASC Utah, LLC

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>WOLF MOUNTAIN RESORTS, L.C., a Utah limited liability company,<br><br>Debtor. | Case No. 2:11-bk-30162-PC<br><br>Chapter 11<br><br>**DECLARATION OF KARA L. PETTIT IN SUPPORT OF EMERGENCY MOTION FOR ORDER: (1) DISMISSING THE CHAPTER 11 CASE PURSUANT TO SECTIONS 305(a) AND 1112(b) OF THE BANKRUPTCY CODE; (2) BARRING THE DEBTOR FROM REFILING FOR BANKRUPTCY FOR 90 DAYS PURSUANT TO SECTIONS 105(a) AND 349(a) OF THE BANKRUPTCY CODE; OR (3) IN THE ALTERNATIVE, FOR ORDER FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br><br>Hearing<br>Date: May 17, 2011<br>Time: 11:00 a.m.<br>Place: Courtroom 1539<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

I, Kara L. Pettit, declare as follows:

1. I am over 18 years of age and have personal knowledge of the facts set forth herein, and if called as a witness, would testify competently with respect thereto.

1

2. I am an attorney and shareholder at the law firm of Snow, Christensen & Martineau in Salt Lake City, Utah.

3. Snow, Christensen & Martineau represents ASC Utah ("ASCU") in litigation matters involving Wolf Mountain Resorts, L.C. ("Wolf Mountain") in the State and Federal courts of Utah.

4. I have personally participated in all of the Wolf Mountain litigation matters in Utah on behalf of ASCU since 2006 to the present, including the Utah State Court Action referenced below.

5. On July 3, 1997, the Debtor sold what was then known as the Wolf Mountain Ski Resort in Park City, Utah to ASCU. ASCU purchased outright most of the Debtor's assets (other than real property) via a Purchase and Sale Agreement, and the parties also simultaneously executed a Ground Lease Agreement whereby the land the Debtor held in fee was leased to ASCU for up to 200 years, with an exclusive option for ASCU to acquire the land as ASCU developed what became known as The Canyons resort.

6. In June 2006, ASCU was forced to seek court intervention against the Debtor ("Utah State Court Action") before the Utah State Court to prevent the Debtor from unlawfully terminating the Ground Lease. On June 28, 2006, the Utah State Court issued an injunction prohibiting the Debtor from issuing any notices of termination. ASCU also sought damages from the Debtor for breach of contract and intentional interference with economic relations. Thereafter, contentious litigation ensued for almost five years, culminating in a seven-week jury trial beginning on March 8, 2011, and resulting in the jury rendering a special verdict on April 26, 2011 in favor of ASCU on all claims. The jury's special verdict awarded ASCU almost $55 million against the Debtor. Attached as Exh. 1 is a true and correct copy of the Jury Special Verdict form.

7. Because of past conduct and suspicions that the Debtor would attempt to convey assets to avoid execution of judgment, on April 28, 2011 on behalf of ASCU, I sent to Debtor's counsel a proposed stipulation and order to not transfer or encumber Debtor's property.

8. On May 3, 2011, I sent an email to advise the Utah Court of the status of the judgments, sent drafts of the judgments to the Utah Court and opposing counsel, and informed the

Utah Court of our request to Wolf Mountain to agree to not convey or transfer property in light of the jury's verdict.

9. Between April 28, 2011 and May 4, 2011, I did not receive any response to my email or request for Wolf Mountain's agreement to not transfer or convey property.

10. On May 4, 2011, I learned that Wolf Mountain's counsel in Texas, the law firm of Hirsch & Westheimer, caused a purported Warranty Deed executed on May 2, 2011, to be recorded in Summit County, Utah on May 3, 2011 whereby Kenneth Griswold, on behalf of Wolf Mountain, allegedly conveyed four parcels of property to Michael A. Baker and Wasatch Capital Corporation. Attached as Exh. 2 is a true and correct copy of the May 2, 2011 Warranty Deed.

11. On May 4, 2011, upon learning of the purported conveyance of property to insiders, on behalf of ASCU, we immediately sought, and on May 5, 2011 obtained, orders from the Utah State Court precluding further conveyances and authorizing a prejudgment writ of attachment not only on the Debtor's property, but also on the parcels purportedly conveyed to Debtor's insiders on May 2, 2011. The Court found that issuance of the orders on an *ex parte* basis was warranted because ASCU demonstrated that it was justly apprehensive that the Debtor may transfer additional assets, which would irreparably harm ASCU because the primary, if not sole, asset of the Debtor is the real property that is subject to the Ground Lease and property that comprise an adjacent anticipated 35-lot subdivision that was the subject of the May 2, 2011 purported deed. The Court also ordered a valuation of the Debtor's assets and prohibited the Debtor or its members from making any further transfers of or encumbrances to its property.

12. The prejudgment writ of attachment expires on May 19, 2011 at 8:30 a.m.

13. On May 9, 2011 at 1:30 Pacific Standard Time, the parties were scheduled to and did appear before Presiding Judge Hilder in the Utah State Court. I was present at this hearing. One of the items to be discussed with the State Court was finalizing the judgment on the jury's special verdict, drafts of which had been routed to counsel on May 3, 2011. As the hearing began, Wolf Mountain's litigation counsel was carefully monitoring his cell phone, and upon receipt of a message informing him of the bankruptcy filing in this Court, he immediately announced the same to all present in the Utah State Court, thereby halting any action from being taken at the hearing.

14. Judge Robert K. Hilder, the judge who presided over the seven-week jury trial, and who prior to trial considered and ruled upon approximately nineteen summary judgment motions and pretrial motions on approximately forty (40) evidentiary issues, is stepping down from the bench in July 2011.

15. Numerous post-trial items are pending and remain to be finalized, including: 1) finalization of the judgment upon the special verdict that was rendered on April 26, 2011 on ASCU's and the Debtor's claims following the seven-week trial, including the award of attorneys' fees, costs, and interest allowed under Utah law, as well as rendering the judgment final under Rule 54(b) of the Utah Rules of Civil Procedure; 2) determination of certain equitable claims based upon the evidence presented during the seven-week trial, or based upon evidence which was presented to the State court via summary judgment motions prior to May 9, 2011; 3) extension of the prejudgment writ of attachment issued on May 5, 2011 so that it can continue in effect until further order of the United States Bankruptcy Court (prior to the stay, the Utah State Court had set a hearing on this item for May 19, 2011 at 8:30 a.m. Mountain Time); and 4) ruling on motions that were filed before May 9, 2011, but have not yet been determined, including a Motion for Rule 11 Sanctions based upon the Debtor's serial attempts to disqualify judges in the State Court matter.

16. The litigation and delay tactics employed by the Debtor in the Utah State Court Action include: two motions to disqualify trial court judges, followed by the threat of a third such motion to disqualify which the Debtor ultimately did not have to file because another party aligned with Debtor, the Osguthorpes[1], filed it instead, arguing that Judge Hilder was biased against the Debtor because property he owned in Summit County would decrease in value if the Debtor prevailed; three motions to compel arbitration and three interlocutory appeals with stay requests to the Utah Supreme Court after the trial court denied the motions; and one removal to federal court in August 2010, after the matter had been litigated in Utah State Court for more than four years.

---

[1] The Osguthorpes have acknowledged that they and the Debtor are working toward the common goal of ousting ASCU, the current owner and operator of The Canyons ski resort, from the property. *See Osguthorpe Combined Petition in Case No. 20100986SC* at 4.

17.   The Debtor's first motion to compel arbitration followed its failed attempt to add eleven new parties to the litigation without leave of court after the case had been pending for almost three years, and with less than three months left in the fact discovery period.

18.   Ultimately, the Utah Supreme Court upheld the denial of the Debtor's first motion to compel arbitration by an unusual procedure of issuing an Order of Affirmance in July 2010, shortly after oral argument, with the full opinion to be issued later.[2] The Utah Supreme Court did this in order to allow the then-scheduled October 2010 trial to be able to proceed.[3]

19.   Eventually, after the two rounds of Debtor's disqualification motions, and after the Debtor's failed attempt at removal to Federal Court, the presiding Judge of the Third Judicial District, Judge Robert K. Hilder, assigned the case to himself to ensure the case would actually get to trial.

20.   In December 2010, after the attempt to disqualify Judge Hilder failed and the petition for extraordinary writ to the Utah Supreme Court was denied, Judge Hilder set the matter for trial in January 2011 and took on the immense task of hearing oral argument and ruling upon the approximately nineteen (19) summary judgment motions that remained pending in the wake of Debtor's numerous recusal motions and other tactics. The trial ultimately went forward on March 8, 2011.

21.   The Debtor has unsuccessfully attempted to use Mr. Griswold's purported California residency on two prior occasions to invoke the jurisdiction of California courts for disputes in an attempt to avoid Utah courts. In both instances, the California courts declined to proceed with the case.

22.   The second largest unsecured creditor listed by Debtor, the DA Osguthorpe Family Partnership ("Osguthorpe"), does not have any claim pending against the Debtor, much less one that has been alleged to be in the amount of $40 million. In July 2010, Osguthorpe

---

[2] The Utah Supreme Court issued its full opinion in November 2010.

[3] The October 2010 trial had to be postponed due in part to the Debtor's attempt to remove the entire case to Federal court in August/September 2010. The filing of the removal automatically stayed the Utah State Court Action until the Federal Court had the chance to hear oral argument on the motion to remand filed by ASCU within a week of removal. The Federal Court granted ASCU's motion to remand at oral argument on September 23, 2010.

supplemented its complaint to allege a claim against both Wolf Mountain and ASCU under the SPA Development Agreement in the Utah State Court Action, but then sought to compel that claim, as well as the ones between Wolf Mountain and ASCU that had been litigated since 2006, into arbitration. The Osguthorpe motion to compel arbitration was denied and the claims were dismissed. As aforementioned, the Osguthorpes' interests are aligned with the Debtor in the Utah State Court Action, in that both were attempting to oust ASCU from property upon which The Canyons ski resort operates.[4]

23. The following listed unsecured creditors are professionals who provided litigation services to the Debtor in the Utah State Court Action: Kirton & McConkie; Stone and Magnanini; Sage Forensic Accounting; Moore & Associates; Vicky Fitlow; and Troy Vincent Golf Course Designs.

24. Since 2006, during the course of the Utah litigation matters, I have had numerous occasions to review Wolf Mountain's filings with the Utah Division of Corporations & Commercial Code. Since at least 2006, Wolf Mountain listed its principal office address as 4000 Park West Dr., Park City, UT 84060. That address is the location of The Canyons ski resort, owned and operated by ASCU since 1997.

25. On May 5, 2011, Wolf Mountain changed its address with the Utah Division of Corporations & Commercial Code from The Canyons ski resort address to Mr. Griswold's personal home address in California. Attached as Ex. 3 is a true and correct copy of the Summary of Online Change dated May 5, 2011 from Utah's Division of Corporations & Commercial Code.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

---

[4] Two specific examples of how this alignment of interest played out in the Utah courts are: 1) the Debtor raised a concern that Presiding Judge Hilder had a conflict of interest because he owned property in Summit County within a few miles of The Canyons resort; however, it was the Osguthorpes' that filed the disqualification motion arguing that Judge Hilder would be biased against the Debtor because if the Debtor prevailed, the Judge's property value would decrease; and 2) the Osguthorpes filed an eviction action against both ASCU and the Debtor to prevent ASCU from maintaining resort operations on portions of the Osguthorpe land. ASCU filed a motion to dismiss the action because the easement granted by the Osguthorpes was not the type of interest that was subject to unlawful detainer. The Debtor, on the other hand, eagerly admitted that both it and ASCU were properly subject to the unlawful detainer action. Ultimately, the Utah Supreme Court upheld the dismissal that ASCU secured of the claims against it as well as the Debtor.

Executed on May 13, 2011, at Salt Lake City, Utah.

_____
KARA L. PETTIT

# EXHIBIT 1

Case 2:11-bk-30162-PC    Doc 7    Filed 05/13/11    Entered 05/13/11 16:15:02    Desc
Main Document    Page 8 of 16

IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT
IN AND FOR SUMMIT COUNTY, STATE OF UTAH
SILVER SUMMIT DEPARTMENT

| | |
|---|---|
| ASC UTAH, INC., a Maine corporation, dba THE CANYONS, | JURY SPECIAL VERDICT |
| Plaintiff, | Consolidated |
| vs. | Case No. 060500297 |
| WOLF MOUNTAIN RESORTS, L.C., a Utah limited liability company, | |
| Defendant. | Judge Robert K. Hilder |
| WOLF MOUNTAIN RESORTS, L.C. | |
| Plaintiff, | |
| vs. | Case No. 060500404 |
| ASC UTAH, etc., et al., | |
| Defendants. | |
| STEPHEN A. OSGUTHORPE, etc., et al., | |
| Plaintiff, | |
| vs. | Case No. 070500018 (Transferred from Salt Lake Dept., # 060913348) |
| WOLF MOUNTAIN RESORTS, L.C., | |
| Defendant. | |
| ENOCH RICHARD SMITH, as Personal representative of the Estate of ENOCH SMITH, JR., | |

EXHIBIT 1
8

Intervenor.

STEPHEN A. OSGUTHORPE, etc., et al.,

Plaintiff,

vs.

ASC UTAH, INC.; AMERICAN SKIING
COMPANY; and LESLIE B. OTTENS,

Defendants.

Case No. 070500520

MEMBERS OF THE JURY:

Please answer the following questions based on a preponderance of the evidence. If you find the evidence establishes the issue presented by a preponderance of the evidence, answer "Yes," if not, answer "No":

### THE CANYONS CLAIMS

Question 1:   Did Wolf Mountain breach the Ground Lease?

YES __X__          NO _____

Question 2:   Did Wolf Mountain breach its duty of good faith and fair dealing under the Ground Lease in its dealings with The Canyons?

YES __X__          NO _____

Question 3:   Did Wolf Mountain breach the SPA Development Agreement?

YES __X__          NO _____

Question 4:   Did Wolf Mountain breach its duty of good faith and fair dealing under the SPA Development Agreement in its dealings with The Canyons?

YES __X__          NO _____

EXHIBIT 1

9

*If you answered yes to one or more of Questions 1 through 4, proceed to Question 5. If you answered no to Questions 1 through 4, skip to Question 6.*

Question 5:   What amount of damages has resulted to The Canyons from Wolf Mountain's breach of the contract and/or from Wolf Mountain's breach of its duty of good faith and fair dealing?

        Contract Damages    $ 54,437,000

Question 6:   Did Wolf Mountain intentionally interfere with The Canyons' existing or potential economic relations?

        YES __X__    NO _____

*If you answered "yes" to Question 6, proceed to Question 7. If you answered no to Question 6, skip to Question 10.*

Question 7:   What damages has The Canyons suffered as a result of Wolf Mountain's intentional interference with the Canyons' existing or potential economic relations.

    $ 54,437,000

Question 8:   Please state whether the damages amount you specified in answer to Question 7 included some or all of the damages amount, if any, you specified in answer Question 5.

        YES __X__    NO _____

*If you answered yes to Question 8, proceed to Question 9. If you answered no to Question 8, skip to Question 10.*

Question 9:   Please state the amount of damages that you specified in answer to Question 8 that you also included in the damages amount you specified in Answer to Question 5.

    $ 54,437,000

EXHIBIT 1
10

## WOLF MOUNTAIN CLAIMS

Question 10:   Did The Canyons breach the Ground Lease with respect to the 2009 audit?

YES _____          NO __X__

*If you answered yes to Question 10, proceed to Question 11. If you answered no to Question 10, skip to Question 12.*

Question 11:   What amount of damages has resulted to Wolf Mountain from The Canyons' breach of the Ground Lease with respect to the 2009 audit?

2009 Audit Damages         $ _____

Question 12:   Other than with respect to the 2009 audit, did The Canyons breach the Ground Lease?

YES _____          NO __X__

Question 13:   Other than with respect to the 2009 audit, did The Canyons breach its duty of good faith and fair dealing under the Ground Lease in its dealings with Wolf Mountain?

YES _____          NO __X__

*If you answered yes to Question 12 and/or Question 13, proceed to Question 14. If you answered no to both Questions 12 and 13, skip to Question 15.*

Question 14:   Other than with respect to the 2009 audit, what amount of damages has resulted to Wolf Mountain from The Canyons' breach of contract and/or from The Canyons' breach of its duty of good faith and fair dealing?

Other Contract Damages         $ _____

EXHIBIT 1
11

# EXHIBIT 2

## THE OSGUTHORPES CLAIMS

Question 15: Did The Canyons breach its duty of good faith and fair dealing in its dealings under the 2001 Restatement of Agreement with the Osguthorpes?

YES _____     NO ___X___

*If you answered yes to Question 15, proceed to Question 16. If you answered no to Question 15, then answer no more questions.*

Question 16:   What amount of damages have resulted to date to the Osguthorpes from The Canyons' breach of its duty of good faith and fair dealing?

Damages     $ _____

Please have the jury foreperson sign the verdict form and notify the bailiff.

DATED this ____ day of April 2011.

BY THE JURY

_____
Foreperson

EXHIBIT 1
12

# EXHIBIT 3



# State of Utah
**DEPARTMENT OF COMMERCE**
Division of Corporations & Commercial Code



## *Summary of Online Changes*

Business Name: WOLF MOUNTAIN RESORTS, L.C.

Entity number: 2008340-0160

Date of Filing: 05/05/2011

<u>Principal Office Address:</u>
Street ..............................1847 Camino Palmero
City ..................................Los Angeles
State ................................CA
Zip ...................................90046

<u>Registered Principals:</u>

New Information (added or updated)
Name ..............................KENNETH GRISWOLD
Position ..........................Manager
Address ..........................1847 Camino Palmero
                                 Los Angeles, CA 90046

Old Information (removed or updated)
Name ..............................KENNETH GRISWOLD
Position ..........................Manager
Address ..........................4000 PARK WEST DR
                                 PARK CITY, UT 84060

Kenneth Griswold 05/05/2011

Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.

EXHIBIT 3

15