1  David S. Kupetz (CA Bar No. 125062)
     dkupetz@sulmeyerlaw.com
2  Mark S. Horoupian (CA Bar No. 175373)
     mhoroupian@sulmeyerlaw.com
3  Asa S. Hami (CA Bar No. 210728)
     ahami@sulmeyerlaw.com
4  **SulmeyerKupetz**
   A Professional Corporation
5  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California 90071-1406
6  Telephone:  213.626.2311
   Facsimile:   213.629.4520
7
   (Proposed) Bankruptcy Counsel for Wolf Mountain
8  Resorts, L.C., Debtor in Possession

9              **UNITED STATES BANKRUPTCY COURT**

10    **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

11  In re                                    Case No. 2:11-bk-30162-PC

12                                           Chapter 11
    WOLF MOUNTAIN RESORTS, L.C.,
13  a Utah limited liability company,
                                             **OPPOSITION OF WOLF MOUNTAIN**
14                                           **RESORTS, L.C., DEBTOR AND DEBTOR**
              Debtor.                        **IN POSSESSION, TO ASC UTAH, LLC'S**
15                                           **"EMERGENCY MOTION FOR ORDER:**
                                             **(1) DISMISSING THE CHAPTER 11 CASE**
16                                           **PURSUANT TO SECTIONS 305(a) AND**
                                             **1112(b) OF THE BANKRUPTCY CODE;**
17                                           **(2) BARRING THE DEBTOR FROM**
                                             **REFILING FOR BANKRUPTCY FOR 90**
18                                           **DAYS PURSUANT TO SECTIONS 105(a)**
                                             **AND 349(a) OF THE BANKRUPTCY**
19                                           **CODE; OR (3) IN THE ALTERNATIVE,**
                                             **FOR ORDER FOR RELIEF FROM THE**
20                                           **AUTOMATIC STAY UNDER 11 U.S.C.**
                                             **§ 362"**
21
                                             [Relates to Dkt No. 6]
22
                                             [Declarations of Kenneth W. Griswold, David
23                                           Wahlquist, Bradley E. Rauch and Mark S.
                                             Horoupian in Support Thereof Filed
24                                           Concurrently Therewith]

25                                           **DATE:**   May 17, 2011
                                             **TIME:**   11:00 a.m.
26                                           **PLACE:**  Courtroom 1539
                                                         U.S. Bankruptcy Court
27                                                       255 E. Temple Street
                                                         Los Angeles, CA 90012
28

AHAMI\ 718436.1

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

## **TABLE OF CONTENTS**

2                                                                                    **Page**

3

4    I. INTRODUCTION ................................................................................ 1

5    II. PERTINENT FACTS ......................................................................... 6

6        A.    The Debtor ............................................................................ 6

7        B.    The Movant Misrepresents The Status Of, And The Debtor's
               Conduct In, The Utah Action ............................................... 7

8        C.    The Movant Knows That The Debtor Did Not Fraudulently Transfer
9              Any Assets ........................................................................... 8

10       D.    The Bankruptcy Case .......................................................... 8

11             1.    The Debtor Files This Case ......................................... 8

12             2.    The Debtor Has Substantial Assets To Reorganize ......... 8

13             3.    The Debtor Has Substantial And Real Creditors ............ 12

14   III. NO GROUNDS EXIST TO HEAR THE MOTION ON AN EMERGENCY BASIS ....... 15

15   IV. THIS BANKRUPTCY CASE IS NECESSARY TO PROTECT THE DEBTOR
         AND CREDITORS AND SHOULD NOT BE DISMISSED ................................. 17

16       A.    Introduction .......................................................................... 17

17       B.    Dismissal Of This Case is Not Appropriate Under Section 1112(b) .......... 18

18             1.    The Debtor Has Not Engaged In Any Improper Prepetition
19                   Conduct ....................................................................... 19

20             2.    The Debtor Did Not File This Case Solely To Avoid An
                     Adverse Judgment, But Rather To Maximize The Value Of Its
21                   Substantial Assets For The Benefit Of All Creditors .................... 21

22             3.    The Debtor Did Not File This Case To Forum Shop Or Re-
                     Litigate The Utah Action In This Court ............................. 23

23             4.    The Debtor Has Other Creditors Asserting Sizeable Claims .......... 24

24             5.    Venue Of This Case Is Proper And Appropriate .............. 25

25             6.    Summary ...................................................................... 27

26       C.    Dismissal Of This Case Is Not Appropriate Under Section 305(a) .......... 27

27             1.    Introduction .................................................................. 27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

2.    Both The Debtor And Its Creditors Would Be Substantially
Harmed, Not Better Served, By Dismissal ...................................... 28

D.    The Cases Upon Which The Movant Relies Are Distinguishable Or
Otherwise Do Not Support Dismissal Of This Chapter 11 Bankruptcy ....... 28

E.    No Refiling Bar Should Be Imposed In The Event This Case Is
Dismissed ......................................................................................... 33

F.    Any Relief From Stay Order Should Be Appropriately Limited In
Scope And Fashioned To Preclude The Movant From Enforcing Any
Judgment Against Estate Property Or Obtaining Lien Or Priority
Rights Ahead Of Other Creditors ............................................................. 35

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

# TABLE OF AUTHORITIES

2                                                                                          <u>Page</u>

3

4  <u>CASES</u>

5  <u>68 West 127 Street,</u>
       285 B.R. at 842-44 ................................................................................. 23
6
   <u>Baker v. Latham Sparrow brook Assocs. (In re Cohoes Indust. Terminal, Inc.),</u>
7       931 F.2d 222, 228 (2nd Cir. 1991)....................................................... 22

8  <u>Casse v. Key Bank National Association (In re Casse),</u>
       198 F.3d 327 (2nd Cir. 1999) .............................................................. 34
9
   <u>Chu v. Syntron Bioresearch, Inc. (In re Chu),</u>
10      253 B.R. 92 (S.D. Cal. 2000) ........................................................ 29, 32

11 <u>Colonial Auto Ctr. v. Tomlin (In re Tomlin),</u>
       105 F.3d 933, 937 (4th Cir. 1997)........................................................ 33
12
   <u>Eastman v. Eastman (In re Eastman),</u>
13      188 B.R. 621, 624 (B.A.P. 9th Cir. 1995).................................. 17, 27, 28

14 <u>Idaho v. Arnold (In re Arnold),</u>
       806 F.2d 937 (9th Cir. 1986) ............................................................... 29
15
   <u>In re 68 West 127 Street, LLC,</u>
16      285 B.R. 838, 844 (Bankr. S.D.N.Y. 2002) ......................................... 22

17 <u>In re Arnold,</u>
       806 F.2d 937, 939 (9th Cir. 1986)................................................... 18, 29
18
   <u>In re Boynton,</u>
19      184 B.R. 580 (Bankr. S.D. Cal. 1995).................................................. 29

20 <u>In re Byrd,</u>
       172 B.R. 970 (Bankr. W.D. Wash. 1994).............................................. 29
21
   <u>In re Campbell,</u>
22      2007 Bankr. LEXIS 4159, *17 (Bankr. N.D. Va. Dec. 18, 2007) ........... 33

23 <u>In re Corino,</u>
       191 B.R. 283 (Bankr. N.D.N.Y. 1995)................................................... 28
24
   <u>In re Dilling,</u>
25      322 B.R. 353 (Bankr. N.D. Ill. 2005) ............................................... 30, 31

26 <u>In re Dilling,</u> 322 B.R. at 355 ................................................................. 30

27 <u>In re Fontainebleau Las Vegas Holdings, LLC,</u>
       2009 Bankr. LEXIS 3529, *2 (Bankr. S.D. Fla. Oct. 26, 2009)........ 25, 26
28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  In re Harvey,
        101 B.R. 250 (Bankr. D. Nev. 1989).......................................................... 29

2

3  In re J. Howard Marshall, III, and Ilene O. Marshall,
        403 B.R. 668, 691 (Bankr. C.D. Cal. 2009) ....................................... 30, 31

4  In re James Wilson Assocs.,
        965 F.2d 160, 170 (7th Cir. 1992)........................................................ 22

5

6  In re Laguardia Assocs., L.P.,
        316 B.R. 832, 837-38 (Bankr. E.D. Penn. 2004)................................... 26

7  In re Luftek, Inc.,
        6 B.R. 539 (Bankr. E.D.N.Y. 1980) ....................................................... 28

8

9  In re Marshall,
        298 B.R. 670, 680-81 (Bankr. C.D. Cal. 2003) ............................... 18, 19

10 In re Martin-Trigona,
        35 B.R. 596 (Bankr. S.D.N.Y. 1983) ..................................................... 28

11

12 In re Mazzocone,
        200 B.R. 568 (E.D. Pa. 1996) .............................................................. 28

13 In re McStay,
        82 B.R. 763, 768 (Bankr. E.D. Pa. 1988)............................................. 31

14

15 In re Merrill,
        192 B.R. 245, 253 (Bankr. D. Colo. 1995) .......................................... 33

16 In re One Fourth Street North, Ltd.,
        105 B.R. 106, 108 (Bankr. M.D. Fla. 1989) ......................................... 23

17

18 In re Peachtree Lane Assocs., Ltd.,
        150 F.3d 788, 795 (7th Cir. 1998)........................................................ 26

19 In re RAI Marketing Services, Inc.,
        20 B.R. 943 (Bankr. D. Kan. 1982) ...................................................... 28

20

21 In re Sletteland,
        260 B.R. 657, 666 (Bankr. S.D.N.Y. 2001) .......................................... 23

22 In re Sparklet Devices, Inc.,
        154 B.R. 544 (Bankr. E.D. Mo. 1993) .................................................. 29

23

24 Leavitt v. Soto (In re Leavitt),
        209 B.R. 935, 939 (B.A.P. 9th Cir. 1997).............................................. 34

25 Marion,
        108 B.R. at 223................................................................................... 22

26

27 Marsch v. Marsch (In re Marsch),
        36 F.3d 825, 828, n.1 (9th Cir. 1994)................................................... 29

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Mueller v. Sparklet Devices, Inc. (In re Sparklet Devices, Inc.),
       154 B.R. 544 (Bankr. E.D. Mo. 1993) .................................................................. 32
2
   N.R. Guaranteed Retirement, Inc.,
3        112 B.R. 263 (Bankr. N.D. Ill. 1990) .................................................................. 31
4
5  **STATUTES**
6  11 U.S.C. §105(a) ................................................................................................ 33
7  11 U.S.C. §1112(b) ................................................................................... 17, 28, 29
8  11 U.S.C. §305(a) ..................................................................................... 27, 28, 29
9  11 U.S.C. §305(a)(1) ....................................................................................... 17, 29
10 11 U.S.C. §349(a) ................................................................................................ 33
11 11 U.S.C. §362(d)(1) ........................................................................................... 29

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Wolf Mountain Resorts, L.C., debtor and debtor in possession (the "Debtor"),

2  hereby files its Opposition to the *"Emergency Motion For Order:  (1) Dismissing The*

3  *Chapter 11 Case Pursuant To Sections 305(a) And 1112(b) Of The Bankruptcy Code;*

4  *(2) Barring The Debtor From Refiling For Bankruptcy For 90 Days Pursuant To Sections*

5  *105(a) And 349(a) Of The Bankruptcy Code; or (3) In The Alternative, For Order For*

6  *Relief From The Automatic Stay Under 11 U.S.C. § 362"* (the "Motion") [Dkt No. 6], filed

7  by ASC Utah, LLC (the "Movant").[1]

8                                                    I.

9                                      **INTRODUCTION**

10    The Movant requests that this Court make a decision, on an extremely truncated

11  briefing schedule, regarding the fate of this barely one-week old bankruptcy

12  reorganization case[2] based on the false emergency that it needs to extend a writ of

13  attachment to stop the Debtor from "fraudulently transferring assets."[3]  There is no

14  emergency and there are no adequate or appropriate grounds to dismiss this case.  The

15  Motion should be denied.

16    Perhaps the best example of the need for this case is the Motion itself.  The

17  Movant is unequivocal about its intentions — it wants this case dismissed, with a 90-day

18  bar to refiling, so that it could "obtain the entry of a final judgment [and] enforce the

19

20

---

[1]  The Movant is "ASC Utah, **LLC**."  Yet the party:  (1) who sued the Debtor in the pending Utah
State Court action, (2) who obtained the approximately $55 million special verdict, and (3) who is
the lessee under the "Ground Lease Agreement" underlying that verdict, is "ASC Utah, **Inc.**"  See,
e.g., Declaration of Kara L. Pettit (the "Pettit Decl."), filed in support of the Motion, at Exh. "1"
Declaration of Kenneth W. Griswold (the "Griswold Decl."), at Exh "2" (the "Ground Lease
Agreement").  The Movant attempts to blur this distinction.  For example, in her Declaration, Ms.
Pettit testifies that her law firm "represents ASC Utah ("ASCU") in litigation matters involving Wolf
Mountain Resorts, L.C. ("Wolf Mountain") in the State and Federal Courts."  Pettit Decl., ¶ 3.  Ms.
Pettit simply refers to her client as ASC Utah and omits any reference to the form of the entity as
either a limited liability company or corporation.  Accordingly, the Movant has failed to present
adequate and competent evidence that it even has standing to bring the Motion.

[2]  This case was filed on May 9, 2011.  The Movant filed the Motion on May 13 — just four days
later.

[3]  See, e.g., Motion at 5:12-17.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  judgment[.]"[4]  Put another way, the Movant wants to grab, and force a firesale of, the

2  Debtor's substantial assets to satisfy its alleged claim ahead and to the detriment of all

3  other creditors, while at the same, insulating itself from any preferential transfer liability.

4     This case is not about "a classic two-party dispute," secreting assets, forum

5  shopping or re-litigating a state court action.[5]  Rather, this case is about protecting the

6  Debtor's substantial assets, maximizing their value and maintaining the status quo with

7  regard to claim priority rights held by the Debtor's multiple creditors.  Contrary to the

8  Movant's misleading, inaccurate, and incomplete portrayal of the Debtor's

9  assets/business, its conduct and the reasons for filing this case, the actual facts establish

10  the following:

11     &bull; In addition to the party who obtained the special jury verdict against

12  the Debtor in the Utah State Court action (the "Utah Action") as part of an initial trial in a

13  consolidated action involving two trials (the second of which will involve the Debtor's

14  claims), the Debtor has multiple other, significant real creditors.  (See Section II.D.3

15  below and the Griswold Decl.[6])

16     &bull; The Debtor has substantial assets — including rights that can be

17  monetized through sale, financing and/or development, separately and independently.

18  (See Section II.D.2 below and Griswold Decl.)

19     &bull; The Movant and its counsel have known for many years (see

20  Griswold Decl. and Exhs. 9-10 thereto, and Rauch Decl. and Exhs. thereto) that the four

21

22

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

___

4    Motion at 6:9-10.

23  5    See, e.g., Motion at 3:13-14, 5:7-10, 6:12-15, 20:10-12.  In fact, before the instant Motion was
24  filed, the Debtor's counsel specifically advised the Movant's counsel that the Debtor was
amenable to attempt to reach a stipulation to limited relief from the automatic stay to proceed with
25  the Utah State Court action in the Utah State Court.  This is one among many facts the Movant
fails to disclose in its zeal to have this case dismissed and leap frog ahead of other creditors.

26  6    A true and correct copy of a "Notice of Mechanics Lien" filed by Kilgore Companies LLC on
May 6, 2011, reflecting a newly asserted claim is appended to the Griswold Decl. as Exh "15."  As
27  reflected therein, the Debtor is identified as the "record owner" of the subject property.  Movant
incorrectly attempts to characterize these claims as not real claims against the Debtor.  (See
28  Motion at 14:10-12 (referring to "the construction liens [as] relat[ing] to disputes involving ASCU,

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  parcels (Willow Draw Property) of property (constituting only approximately 5% of the

2  allocated density of the developable property rights under the original development

3  agreement) that the Movant asserts were improperly transferred after the special jury

4  verdict was issued, in fact, were transferred in June 2005, and that the recent recordation

5  of deeds upon which the Movant entirely basis its claims of fraudulent transfers simply

6  was to correct a misstep in those 2005 transfers stemming from 2 lost documents in the

7  chain of title.

8          •    The Debtor's "nerve center" is in Los Angeles.    The Debtor's

9  managing member, Kenneth Griswold, who makes the decisions governing the Debtor,

10  including, but not limited to, decisions regarding claims held by and against the Debtor,

11  the Debtor's alternatives for reorganization and other significant matters, as well as the

12  Debtor's books and records, all are in Los Angeles.[7]

13          •    The Movant is not the party who filed the Utah Action against the

14  Debtor, who obtained the $55 million special jury verdict or who is the party to the Ground

15  Lease.

16          •    The Utah Action is far from over.    Indeed, the Utah Action is a two-

17  phased consolidated action, only one of which has proceeded to trial (in which the special

18  verdict was rendered), and trial of the second phase (which involves the Debtor's claims)

19  has yet to commence.

20          •    The "Ground Lease Agreement" with respect to which the special

21  verdict was issued specifically precludes a merger, reorganization, change of control, or

22

---

23  not the Debtor, for work at The Canyons resort" and, therefore, purportedly not a claim against
   the Debtor or its property)).

24  [7]  See, e.g., In re Fontainebleau Las Vegas Holdings, LLC, 2009 Bankr. LEXIS 3529, *4-7

25  (Bankr. S.D. Fla. 2009) (denying motion to change venue away from Florida even though project
   owned by the debtor was in Las Vegas because "what went on in Las Vegas was ultimately

26  controlled from the nerve center in Florida"). See also "Memorandum Of Decision And Order
   Denying Motion Dismiss" entered on July 21, 2008 by the United States District Court for the

27  District of Utah, Exh "1" to Griswold Decl. at p. 5 (finding "that based on the clear and convincing
   evidence cited by Mr. Griswold, he was a citizen of California on the date this suit was filed" and

28  rejecting ASC Utah's "reliance on outdated facts").

AHAMI\ 718436.1                            3

1  corporate restructuring of the lessee — ASC Utah, Inc. — without the Debtor's consent

2  (in one instance, such consent was conditionally granted  based on conditions that ASC

3  Utah, Inc., then failed to satisfy and violated and a subsequent transfer ("assignment" as

4  that term is defined in Section 10.02 of the Ground Lease) occurred, without even the

5  required request to the Debtor for consent, and the Debtor has not consented to either of

6  the two assignments.).

7           •      The consequences of an assignment and/or change of control of

8  ownership interests in the lessee without the Debtor's consent is the voiding and

9  forfeiture of the Ground Lease and this issue is still to be litigated as part of the second

10 phase of trials in the Utah Action.

11          •      Shortly following the commencement of this bankruptcy case, counsel

12 for the Movant contacted the Debtor's counsel and proposed a stipulation for limited relief

13 from the automatic stay and was advised by the Debtor's counsel that the Debtor could

14 be amenable to such a stipulation.  It was agreed that Movant's counsel would send the

15 Debtor's counsel a written summary of the proposed actions for which relief was sought.

16 However, the Movant's counsel did not move forward as agreed, ignored the Debtor's

17 counsel's follow up inquiry, and obtained the expedited hearing on the Motion without any

18 advance notice or discussion with the Debtor's counsel, even though discussions

19 between them had commenced and the Debtor's counsel believed were still in progress

20 regarding a stipulation for limited relief from the automatic stay.  (See Declaration of

21 Mark S. Horoupian (the "Horoupian Decl.").)

22          As the foregoing and the below discussion and Declarations and Exhibits

23 submitted in support of this Opposition establish, this case is not what the Movant would

24 have the Court believe.  It is not a "classic two-party dispute." It does not involve an

25 attempt to forum shop.  It is not an attempt to relitigate the issues tried in the Utah Action.

26 Indeed, as noted above, the Debtor is prepared to move forward with the litigation in Utah

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  and any associated appeals by obtaining appropriate limited relief from the automatic

2  stay from this Court.[8]

3       The Debtor has not had adequate time to fully respond to the Motion and to locate

4  and gather all documents to support this response; the Debtor was not served with the

5  Motion until after 4:00 p.m. on a Friday afternoon and was advised that the hearing was

6  set for Tuesday morning.  Nevertheless, the Movant's false contentions that are

7  fundamental to, and at the heart of the Motion (namely, that "the Debtor has very few

8  legitimate creditors", that the Debtor has "concealed assets," that this case "is a classic

9  two-party dispute," that the Debtor engaged "outrageous and vexatious conduct" before

10  the Utah State Court, that the filing of this case "in the Central District of California has

11  absolutely no legitimacy," that Movant has not known for years of that the four parcels

12  referenced above were not property of the Debtor), are all refuted in the Declarations

13  submitted with this Opposition.

14       In sum, the Movant has manufactured an emergency by playing fast and loose

15  with the facts and manipulating its presentation in an attempt to mislead the Court so that

16  it could leap frog its claim ahead of all other creditors and to obtain a preferential, priority

17  position to the detriment of those creditors.[9]  At the same time, the Movant is attempting

18  to preclude the Debtor from having any opportunity to reorganize or even to complete the

19  trial against ASC, Inc.

20       In contrast, the Debtor commenced this case to preserve, protect, and maximize

21  the value of the estate for all creditors, maintain the status quo with respect to creditors'

22

23  [8]  The Debtor thought such relief could have been facilitated through a stipulation and, in fact, participated in initial discussions with the Movant in that regard.  The Debtor is prepared to

24  unilaterally bring a motion before this Court requesting such relief.  Movant's request for relief from the automatic stay in the Motion (even assuming that Movant has standing, which the

25  Debtor asserts it does not) is an inadequate and inappropriate motion for relief from the automatic stay that fails to comply with the requirements of this Court's Local Bankruptcy Rules.

26  [9]  The potential retirement of the trial judge during the middle of a consolidated action (the second, significant phase of the consolidated action trials has not even started and Movant

27  conceals from this Court that the parties are only in the middle of the consolidated trial process) does not create an emergency (and as stated above, the Debtor has no intent to relitigate the trial

28  that has occurred so far).

1  rights of priority, and prevent potential claim enforcement actions by Movant that could

2  ultimately result in a firesale of the Debtor's assets to the detriment of all creditors and

3  legitimately motivated parties.  The Movant is attempting to freeze the Debtor's assets

4  that are needed in order for the Debtor to move forward with its plan of reorganization

5  which includes, subject to court approval, potential sale, refinancing, and/or development

6  of various different and significant assets held by the Debtor and to be contributed, as

7  discussed below, in connection with a plan of reorganization.

8          Based on the foregoing, and as detailed herein and the accompanying

9  declarations, the Motion should be denied.

10                                          II.

11                              **PERTINENT FACTS**[10]

12  **A.     The Debtor**

13          The Debtor is a limited liability company.  Kenneth Griswold ("Griswold") is the

14  managing member of the Debtor.  Griswold resides and works in Los Angeles, California,

15  and spends the substantial majority of his time in Los Angeles.  Griswold is responsible

16  for the significant decisions regarding the Debtor, its assets, claims against the Debtor,

17  claims held by the Debtor, and the alternatives for reorganization of the Debtor, among

18  other things.  As set forth in the Griswold Decl. and in the *"Memorandum Decision and*

19  *Order Denying Motion To Dismiss"* issued by United States District Judge, Ted Stewart,

20  on July 21, 2008, attached as Exh. "1" to the Griswold Decl., the Debtor's citizenship is

21  determined by Griswold's citizenship, which clearly is California and, specifically, Los

22  Angeles.  As long ago as July 21, 2008, a court held that ASC Utah, Inc., a Maine

23  corporation, was incorrect in its assertion to the contrary and was relying on "outdated

24

25  ――――――――――――
    [10]  The facts are set forth in the Griswold, Wahlquist, Rauch and Horoupian Decls., each filed
26  concurrently herewith.  The present Motion was filed on only one business days' notice.  As a
    result, the Debtor has not had sufficient time to fully develop the facts or gather necessary
27  documents for this Opposition.  Nevertheless, as evidenced below, based on the facts and
    documents the Debtor was able to assemble, it is clear that the Movant's recitation of the facts in
28  its Motion is incomplete, inaccurate, misleading and/or false.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    facts and other evidence" in asserting that the domicile of the Debtor is Utah. (See

2    Exh. "1" to Griswold Decl.)

3           The Debtor's other members, Wasatch Resort Holdings, LLC, a Texas limited

4    liability company, MAB Resort Holdings, LLC, a Texas limited Liability company, and the

5    Griswold-Kim 2005 Irrevocable Trust are located in Texas and California, respectively.

6           The Debtor's books and records are primarily located in Los Angeles, California,

7    and that has been the case since 2006.  Prior to 2006, the Debtor's books and records

8    were largely located in Texas.  The Debtor's books and records have not been

9    maintained in Utah since 1997, and the Debtor's accounting records were never

10    maintained in Utah.

11           The Debtor has significant assets with substantial value that can be monetized

12    through the sale, financing, and/or development as various separate sets of valuable

13    rights.  The Debtor is the former operator of what is now known as The Canyons Ski

14    Resort.  The Debtor owns or leases most of the land that comprises the ski resort, which

15    it in turn leased to ASC Utah, Inc., a Maine corporation, pursuant to a Ground Lease and

16    various related documents and amendments.  The Ground Lease provides for rent

17    payments calculated by various means, including (1) an payment equal to 4% of the

18    lessee's gross revenues, including lodging revenues, and (2) additional rent based on the

19    volume of paid skier visits achieved at the ski resort.  (See Section 3.01 of the Ground

20    Lease.)  Portions of the Ground Lease, the First, Second and Third Amendments to the

21    Ground Lease and the Notice of Fourth Amendment to Ground Lease are attached as

22    Exhs. 2, 3, 4, 5 and 6, respectively, to the Griswold Decl.

23           **B.**      **The Movant Misrepresents The Status Of, And The Debtor's Conduct**

24                  **In, The Utah Action**

25           See Walhquist Decl. submitted with this Opposition for a discussion of the Utah

26    Action.

27

28

**C.    The Movant Knows That The Debtor Did Not Fraudulently Transfer**
   **Any Assets**

See Rauch and Griswold Decls. and respective exhibits thereto submitted with this Opposition.

**D.    The Bankruptcy Case**

   **1.    The Debtor Files This Case**

   The Debtor commenced this reorganization case by filing a voluntary chapter 11 petition on May 9, 2011. This case was commenced in order to allow the Debtor an opportunity to effectuate a reorganization. The precipitating events were actions that could be taken by ASC Utah, Inc., to obtain liens on assets of the Debtor and/or otherwise advance its claims so that they would have priority over all other creditors of the Debtor. As set forth herein and in the Griswold Decl., there are multiple other significant creditors. In addition, as set forth herein and in the Griswold Decl., the Debtor has significant assets, but does not have liquid assets at this time. This case was commenced in order to allow the Debtor an opportunity to monetize its assets and come forward with a plan of reorganization.

   **2.    The Debtor Has Substantial Assets To Reorganize**

   The Debtor has significant assets that can be monetized and has the ability and intent to move forward with a viable plan of reorganization. Monetization of the Debtor's assets can be achieved through sale, financing, and/or development of various separate sets of valuable rights, including, without limitation, the following:

   **a.    100 Units — Second Amendment To The Ground Lease**

   Pursuant to the Second Amendment to the Ground Lease the Debtor traded ASC Utah, Inc. 30 development lots for the right to receive 100 residential units on the mountain at the Canyons Ski Resort. Further, ASC Utah, Inc., also obligated itself to pay for infrastructure and water required in connection with construction of these units. This right to receive 100 units is a valuable right and can be sold or otherwise monetized by the Debtor. (See Illustrative Plan Map attached as Exh. "7" to Griswold Decl., with circle

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  in inset appearing in lower left corner of map reflecting the general location of 100 units.)

2  Total square footage for these units is approximately 150,000 square feet.  Anticipated

3  net profits for these units could exceed $60,000,000.

4              **b.    Fourplex F8 Development**

5              The Debtor holds the right to obtain the Fourplex residential property at the

6  Canyon Ski Resort (Parcel 8) that is estimated to be worth approximately $1 million.  This

7  would be an 8,000 square foot structure, including four 2,000 square foot units.  (See

8  Illustrative Plan map attached as Exh. "8" to Griswold Decl., with circle toward upper right

9  corner of map reflecting location of Fourplex.)

10             **c.    Rights With Respect To Acquisition Of Island In The**

11                    **Bahamas**

12             The Debtor has the right to obtain, through payment of an amount which

13  exceeds $1,250,000 (the Debtor has not had an opportunity to conduct an accounting of

14  the full amount due to Fairstar at this time) to Fairstar Resources, Ltd. ("Fairstar"), the

15  acquisition of a 50% interest in an entity that owns 100% interest in real property

16  consisting of approximately 1,400 acres located on the southern tip of the Island of Little

17  Exuma in the Bahamas.  The Debtor believes that this right has a value that may exceed

18  $100 million.  At this time the Debtor lacks liquidity, but intends to pursue, preserve, and

19  protect its rights with respect to this property and to continue efforts to perfect its rights

20  and develop the property.

21             **d.    Potential Assignment Of Right To Receive Rent**

22             The Debtor has the right to assign its rights to receive payments under the

23  Ground Lease and related documents, including assignment of rent payments.  Rent

24  primarily takes the form of percentage rent (4%) of gross revenues (this year's rent has

25  already been earned and it is expected that percentage rent will exceed $2,000,000 for

26  the past year when it is paid this September 15, 2011) of the ski resort and additional rent

27  based on skier days achieved at the ski resort (this additional rent will ultimately amount

28  to as much as $14 million).

1    e.    **Option Rights**

2         Under the Ground Lease, the Debtor has significant option rights, including

3    the right that when the lessee pulls down a building permit it is obligated to purchase land

4    from the Debtor at roughly 11% of the construction costs.  These have significant value

5    that the Debtor can monetize through sale or other transfer of such rights.  The lessee

6    has announced the construction of a 350–stall underground parking structure on the

7    Debtor's property to be constructed this summer which will result in the Debtor receiving

8    approximately 11% of the amount of the capitalized costs of construction.  The Debtor

9    has not received an estimate from the lessee as to the expected construction costs for

10    that project.

11    f.    **$1 Million Letter**

12         Pursuant to an agreement with ASC Utah, Inc., when it builds certain

13    residential or resort projects, the Debtor that has the right to buy portions of the project at

14    66% of the sales price, up to an aggregate credit of $1 million.  The rights are embodied

15    in a document commonly referred to as the Westgate settlement letter.

16    g.    **Redpine Road Infrastructure Rights**

17         The Lessee under the Ground Lease is obligated to provide the Debtor with

18    reimbursement for portions of the existing infrastructure for developments constructed

19    adjacent to Redpine Road.  The calculation is dependent upon the square footage of the

20    development constructed by ASC Utah, Inc.   This is a contract right that can be sold and

21    may be worth as much as $500,000 or more.

22    h.    **Fee Simple Rights**

23         The Debtor owns extensive fee simple interests in real property.  These

24    rights could be sold or financed, in whole or in part, and could generate substantial funds.

25    In fact, in 2006, ASC Utah, Inc., through Jack Bistricer and his counsel Clark Taylor

26    offered to purchase real property from the Debtor for $100 million.  (See Exhs. "9" and

27    "10" to the Griswold Decl.)

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

i.    **Community Water Connection Rights**

The Debtor holds rights to connect to the Community Water culinary water system. The Debtor's rights include approximately 55 connections and these rights could be sold. The Debtor estimates that these water connection rights have a value that likely ranges between $10,000 and $25,000 for each connection.

j.    **Claims For Contribution Against Neighboring Property**
**Owners Now Subject To Arbitration**

The Debtor holds claims against neighboring property owners that are now subject to arbitration pending in California and may amount to approximately $55 million plus attorneys' fees. (See Demand for Arbitration attached as Exh. "11" to the Griswold Decl.) Pursuant to a development agreement these parties along with the Debtor agreed to contribute land in connection with ASC Utah, Inc.'s construction of a golf course. This claim for contribution could be pursued by the Debtor or could be sold by the Debtor separate from the sale of other assets of the Debtor or in conjunction with such a sale.

k.    **Termination Of Ground Lease**

In the consolidated Utah Action, the trial of the Debtor's claims against ASC Utah, Inc., which has not yet commenced but is part of the consolidated action, could result in the termination of the Ground Lease. Upon termination of the Ground Lease, the Debtor might determine that it would run the Canyon Ski Resort again as it did before entering into the Ground Lease. This result could either be achieved through the upcoming trial in the consolidated Utah action or in connection with the successful appeal of issues involved in the initial trial in the consolidated action.

l.    **Willow Draw Property**

Of the total allocated density for development, the Willow Draw Property represents approximately 5% of the developable property rights attributable to the original development agreement. (See Illustrative Plan Map attached to the Griswold Decl. as Exhibit "12," identifying the location of the Willow Draw Property.) The current owners of the Willow Draw Property are affiliates of Griswold and have agreed to contribute the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    property or the proceeds from development of the property as part of a plan of

2    reorganization for the Debtor.  The Debtor currently anticipates that development of the

3    Willow Draw Property will move forward this coming summer in conjunction with the

4    lessee's announced commencement of construction of the golf course.

5                      3.    **The Debtor Has Substantial And Real Creditors**

6                      In addition to the claim of ASC Utah, Inc., there are other substantial claims

7    against the Debtor, including (without limitation), the following:

8                      •    Osguthorpe Claims.  The Osguthorpe Parties are landlords to

9    the Debtor for 560 acres of ski area land that comprises the center of the ski area.

10   Additionally, the Osguthorpe Parties are the owners of four development areas located

11   within The Canyons specially planned development area.  The Osguthorpes are currently

12   prosecuting claims for breach of contract, breach of lease and fraud.  The damages

13   claimed are for loss of development and similar to those claimed in the ongoing ASC

14   Utah, Inc. litigation. Stephen Osguthorpe also asserts a separate $1,200,000 claim for

15   breach of contract.

16                     •    Park City West & Associates ("Park West").  Park West is a

17   developer that operates under a number of names and various entities, including limited

18   partnerships and limited liability companies, the ownership of which the Debtor has been

19   unable to determine.  The Debtor believes the Park West owners include Joseph

20   Krofcheck, Walter Plumb, of Salt Lake City, Utah, Richard Reynolds, address unknown,

21   Richard Frost and Gerald Friedman of Los Angeles, California.  Joseph Krofcheck,

22   formerly a resident of California and now a resident of Virginia, testified in a deposition

23   taken in the past six months that he was an owner of Park West, but could not offer any

24   other material details, other than Walter Plumb is a co-owner.  Walter Plumb, by and

25   through his counsel, has filed two lawsuits against the Debtor.  In both, lawsuits Park

26   West asserts breach of contract claims involving two separate development agreements.

27   The first complaint against the Debtor was filed and was dismissed.  The second

28   complaint was ordered to arbitration by Judge Lubeck of the Utah District Court of

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Summit County.  At a deposition of Walter Plumb taken in 2007, Mr. Plumb testified that

2  the amount of Park West's claim against the Debtor is as much as $20,000,000.  (See

3  selected pages of deposition transcript attached to Griswold Decl. as Exh. 13.)

4              •     Summit County, Utah.  Summit County maintains claims

5  against the Debtor for real property taxes and greenbelt rollback taxes on all or portions

6  of approximately 67 tax parcels resulting from the ownership of fee simple real property

7  within its jurisdiction and claims for failure to transfer a resort core fee simple transfer

8  density site to accommodate 45,000 square feet of multifamily/hotel development and

9  other property transfers resulting from obligation created through the Amended Specially

10 Planned Area Development Agreement dated November 15, 1999.  In Utah, real property

11 taxes are paid in arrears due for the current year on or before November 30th.  To the

12 Debtor's knowledge, including a search of the Summit County Assessor records on

13 May 16, 2011, the real property taxes for 2011 have not been paid.  The Debtor has not

14 calculated the amounts due; however, the Debtor estimates that the amount owing for

15 real property taxes and greenbelt rollbacks may likely exceed $1,000,000.  Particularly,

16 Summit County has made demand for fee simple title to various parcels of real estate for

17 open space, roadway, development on other purposes, including what is referred to as

18 Parcel H or RC24.  The Debtor estimates the value of the Parcel H to Wolf Mountain to

19 exceed $4,000,000.  The Debtor does not dispute Summit County's claim for the

20 payment of real property or greenbelt rollback taxes.  The Debtor does however, dispute

21 Summit County's claim that it is obligated to provide any further property transfers or any

22 other related remuneration.

23             •     Fairstar Resources, Ltd. ("Fairstar"), Perth, Austrailia —

24 Undisputed.  On March 6, 2009, the Debtor executed and delivered a promissory note to

25 Fairstar in the amount of $2,296,651.38 in conjunction with the purchase of a judgment

26 against the owner and developer of a real estate golf/marina resort community, located

27 on approximately 1,400 hundred acres on the southern tip of the Island of Little Exuma,

28 Bahamas.  The Debtor has not performed or agreed to an accounting of the amount due

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  but at this time, estimates such amounts due and owing under the promissory note to

2  exceed $1,250,000.

3            • __Kirton and McConkie — Undisputed__.  On April 15, 2009, the

4  Debtor entered into an agreement for legal services for matters  including but not limited

5  to, __Fairstar Resources, Ltd v. American Institutional Partners__.

6            • __William Harris, Robert Chiste and R&S Partners —__

7  __Undisputed__.  In 1996, the Debtor issued a debt offering in increments of $250,000.  The

8  debt is dischargeable at the election of the debt holder for the receipt of a lot within the

9  Willow Draw Subdivision.  To date, three debtholders remain having not yet elected to

10  receive the $250,000, plus applicable interest or a Willow Draw Subdivision Lot.

11            • __Stone & Magnanini, LLP, New Jersey — Disputed__.  On

12  June 4, 2009, a New Jersey arbitrator issued an award for a breach of contract claim

13  award in the amount of approximately $128,000.  The Debtor disputes the arbitration

14  award and the jurisdiction of the arbitrator and the standing of the creditor to assert the

15  claim in arbitration.

16            • __Sage Forensic Accounting — Undisputed__.  Unpaid debt for

17  auditing services and expert witness fees.

18            • __Moore & Associates, Eugene Oregon — Undisputed__.  Unpaid

19  debt for general legal fees and litigation fees for matters performed since January 2006.

20            • __Distinctive Homes, Utah — Disputed__.  Lien recorded on

21  January 21, 2011 against the Debtor's real property with the Summit County Recorder's

22  Office in Book 2066 on Page 1513.  The lien claims the unpaid amounts are for

23  improvements to the First Aid, Ski Instructor and Ski Patrol Buildings located on the

24  Debtor's  real property.  A release of lien was filed on February 14, 2011, however, the

25  Debtor has not received a release of claim.

26            • __Highland Excavating, Inc. — Disputed__.  Lien recorded on May

27  2, 2011 against the Debtor's real property with the Summit County Recorder's Office in

28  Book 2079 on Page 0253.  No release of lien is recorded as of May 16, 2011.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    • Vicky Fitlow Park City, Utah — Undisputed. Unpaid debt for

2   general legal fees and litigation fees for matters performed since January 2006.

3    • Build, Inc. — Disputed. Lien recorded on March 28, 2011

4   against the Debtor's real property with the Summit County Recorder's Office in Book

5   2075 on Page 0037. No release of lien is recorded as of May 16, 2011.

6    • Grazo Electric, Inc., Allied Building Products, Consolidated

7   Electrical Distrib. — Disputed. Liens were recorded identifying claims against the

8   Debtor's real property. Release of Liens were recorded against the property with no

9   express release of claims for the benefit of the Debtor.

10    • Troy Vincent Golf Course Designs, Augusta, Georgia —

11   Undisputed. Debt for services performed as an expert witness.

12    • Suitter Axland, PLLC — Undisputed. Debt for legal services

13   on various matters since May 2006.

14    • Nolte Associates, Inc. — Disputed. Claim for services

15   associated with engineering review of Willow Draw Road.

16        The above is not designed to be an all encompassing list of the Debtor's

17   creditors, but rather is a summary put together quickly under the urgent demands and

18   time constraints of responding to the Emergency Motion within one business day.[11]

19                                III.

20   **NO GROUNDS EXIST TO HEAR THE MOTION ON AN EMERGENCY BASIS**

21        The instant Motion boldly asks this Court to determine the destiny of this entire

22   bankruptcy case reorganization on only one business days' notice and just one week

23   after it was filed. The Motion was served on the Debtor after 4:00 p.m. on a Friday

24

25   _____

[11]   Again, the foregoing is not an exhaustive list of all of the Debtor's creditors. For example, the
26   Debtor's insiders also hold substantial claims against the Debtor, which, per FRBP 1007(d) are
not included on the list of the Debtor's 20 largest creditors. The claims include but are not limited
27   to the claims of Wasatch Resort Holdings, LLC ($3,001,469.04-loan), Mimi Kim ($55,000-
expense reimbursement); Kenneth Griswold ($500,000-unpaid salary); Wasatch Capital
28   Corporation ($622,500-loan); Camino Palmero West, LLC ($622,500-loan).

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   afternoon, with a hearing date set for Tuesday morning.[12]  This says nothing about when

2   (if at all) creditors in this case — who also have a significant interest in the disposition of

3   this case — were served with the Motion.

4        Courts have held that "notice should only be shortened for <u>compelling</u> reasons." <u>In</u>

5   <u>re Fields</u>, 2007 Bankr. LEXIS 1749, *3 (Bankr. C.D. Ill. May 29, 2007) (emphasis added).

6   The existence of compelling reasons is particularly paramount here given the extremely

7   little amount of notice provided and the gravity of the relief sought.  The Movant has no,

8   much less compelling, reasons.

9        The Movant relies on the following to support its request for an emergency

10  hearing:  (1) that it needs time to seek an extension of a pre-judgment writ of attachment

11  issued by the Utah State Court and set to expire on May 19, 2011 because the Debtor

12  allegedly has been secreting assets; and (2) that Judge Hilder, the judge who presided

13  over the Utah Action, is scheduled to retire from the bench in July 2011.  Neither has

14  merit.

15       The Movant knows the Debtor has not secreted any assets.  The claims it makes

16  about the Debtor's back-dating of a deed to four parcels to put assets beyond the

17  Movant's reach is a sham.  As explained in the Rauch Decl., as well as the Griswold

18  Decl. and as reflected on Exhs. 9 and 10 thereto, the Movant has known for many years

19  now that those parcels were transferred (or intended to be transferred) by the Debtor in

20  June 2005.[13]

21       Moreover, Movant's desire to extend the attachment writ before its expires only

22  underscores the need to maintain this case.  Were this bankruptcy case dismissed,

23  _____

24  [12]  Although the Debtor's counsel became aware earlier in the day on Friday that a motion to
    dismiss the case was to be filed, the Motion itself was not served on counsel until the end of the

25  day.

    [13]  If the Movant truly were concerned about the unlawful transfer of assets, it would not be

26  asking this Court to dismiss this case.  Now that the Debtor is in bankruptcy, all of its assets are
    subject to this Court's exclusive jurisdiction and control.  Aside from prohibiting any unauthorized

27  post-petition transfers, this Court is fully equipped to remedy any alleged fraudulent transfers.
    Moreover the current record title holders of the assets are prepared to contribute the assets

28  and/or the proceeds of their development as part of a plan of reorganization for the Debtor.

1 Movant will be quick to, attempt to seize whatever assets it can to satisfy its alleged
2 claim to the disadvantage of other creditors. Maintaining this case is the only way to
3 ensure a fair and equitable recovery to all of the Debtor's creditors and to preserve,
4 protect, and maximize the value of the Debtor's substantial assets.

5 Finally, dismissing this entire bankruptcy case simply to allow the Utah Action to
6 proceed before Judge Hilder is like killing an ant with a sledgehammer. If it is simply the
7 immediate continuation of the Utah Action that the Movant desires, this Court may
8 advance that goal by much less severe means. One example would be to fashion an
9 appropriate form of relief from stay — a solution the Debtor already told the Movant it
10 could agree to before the Movant sprung the present Motion on the Debtor. That would
11 achieve the Movant's objective, while still preserving the Debtor's assets for its valid
12 creditors. Moreover, based on the Movant's own contentions, it appears that Judge
13 Hilder will be retiring during the middle of the consolidated Utah Action.

14 In short, no valid grounds exist to decide the Motion on an expedited basis and
15 without a fully developed record; especially considering the extraordinary form of relief it
16 seeks.[14]

17 <center>IV.</center>

18 <center>**THIS BANKRUPTCY CASE IS NECESSARY TO PROTECT**</center>
19 <center>**THE DEBTOR AND CREDITORS AND SHOULD NOT BE DISMISSED**</center>
20 **A.    Introduction**

21 The Motion seeks to dismiss this case under sections 1112(b) and
22 305(a)(1) of the Bankruptcy Code. The Movant is not entitled to this relief under either
23 section. There were no improper purposes behind the Debtor's filing of this case. More
24 accurately, as discussed above, while the Debtor does not have liquid assets at this time,
25 the Debtor has valuable assets to preserve, protect and monetize and has filed this case
26 in an effort to maximize the value of those assets for the benefit of all its creditors and

27 ───────────────
28 [14] See Eastman v. Eastman (In re Eastman), 188 B.R. 621, 624 (B.A.P. 9th Cir. 1995)
(acknowledging that relief under Bankruptcy Code section 305(a) "is an extraordinary remedy").

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  equity holders and to ensure a fair and equitable recovery to creditors through a plan of

2  reorganization.

3      **B.    <u>Dismissal Of This Case is Not Appropriate Under Section 1112(b)</u>**

4          Section 1112(b) provides:

6          (1) Except as provided in paragraph (2) of this
7  subsection, subsection (c) of this section, and section 1104
   (a)(3), on request of a party in interest, and after notice and a
   hearing, absent unusual circumstances specifically identified
8  by the court that establish that the requested conversion or
   dismissal is not in the best interests of creditors and the
9  estate, the court shall convert a case under this chapter to a
   case under chapter 7 or dismiss a case under this chapter,
10 whichever is in the best interests of creditors and the estate, if
   the movant establishes cause.

11  11 U.S.C. § 1112(b)(1).  The Movant does not rely on any of the enumerated factors in

12  section 1112(b)(4).  The Movant only asserts that the case should be dismissed because

13  it was filed in bad faith.  The facts do not support the Movant's claims of bad faith.

14          As an initial matter, it is important to emphasize that dismissal under section

15  1112(b) is an extraordinary remedy that should be used sparingly.  <u>See, e.g.</u>, <u>In re Marion</u>

16  <u>Street Partnership</u>, 108 B.R. 218, 223 (Bankr. D. Minn. 1989) (warning that "[d]ismissal of

17  a bankruptcy case [under section 1112(b)] is the ultimate sanction [and] should be used

18  with caution" and denying motion to dismiss); <u>In re Aerovias Nacionales De Colombia</u>

19  <u>S.A. Avianca</u>, 303 B.R. 1, 17 (Bankr. S.D.N.Y. 2003) (*noting that* "courts have insisted

20  that § 1112(b) be used with caution"); <u>In re Sletteland</u>, 260 B.R. 657 (Bankr. S.D.N.Y.

21  2001) (acknowledging that "[m]any cases hold that courts should dismiss on bad faith

22  grounds sparingly") (*citations omitted*).  As one court explained:

24          Good faith is lacking only when the debtor's actions are a
            <u>clear</u> abuse of the bankruptcy process.

25  <u>In re Marshall</u>, 298 B.R. 670, 680-81 (Bankr. C.D. Cal. 2003) (*emphasis added, quoting*

26  <u>In re Arnold</u>, 806 F.2d 937, 939 (9th Cir. 1986)).

27          Although the existence of bad faith "'depends on an amalgam of factors,

28  and not upon a specific fact'" (<u>id.</u> at 680 (*citation omitted*)), "[t]he test is whether a debtor

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    is attempting to deter and harass creditors unreasonably, and not attempting to effect a

2    speedy, efficient reorganization on a timely basis." Id. at 680.

3           The Movant claims bad faith on the grounds that the Debtor allegedly:

4    (1) engaged in improper prepetition conduct, such as the concealment or "fraudulent

5    transfers" of assets and employing vexatious litigation tactics in the Utah Action; (2) filed

6    this case in an attempt to merely to obtain the benefits of the automatic stay or otherwise

7    frustrate the Movant's attempt to obtain and enforce the judgment, while it re-litigates the

8    Utah Action in this Court; (3) has no assets or business to preserve or reorganize;

9    (4) very few creditors; and (5) is not a proper debtor in the Central District of California.

10           As discussed below, none of this is true.

11           **1.**    **The Debtor Has Not Engaged In Any Improper Prepetition**

12                **Conduct**

13               **a.**    **The Debtor Did Not Transfer Any Assets Improperly**

14           The Movant's primary ground for claiming bad faith is the Debtor's alleged

15    "fraudulent transfer" of assets pre-petition to remove them from Movant's reach.  In

16    particular, the Movant contends that, following the announcement of the jury's special

17    verdict, the Debtor engaged in a scheme to transfer four parcels to its principals and

18    "back-dated" those deeds to June 3, 2005.  See Motion at 8:3-17.

19           To support its claim, the Movant relies upon a "Warranty Deed" signed on

20    May 2, 2011 that purportedly was backdated to June 3, 2005 (the "May 2 Deed").[15]

21    There was no intent or effort to "backdate" whereas the Movant feigns ignorance and

22    surprise, it knows that those four parcels were not transferred in response to the special

23    verdict. (See Rauch Decl. and exhibits thereto; Griswold Decl. and Exhs. "9" and "10"

24    thereto.)  In fact, the Movant has known for years that those parcels comprise property

25    that was expected to be platted into 35 single family lots and that, to that end, the Debtor

26

27    ────────────────────

[15]  Although the Motion states that this deed is appended to Pettit Decl. as Exh. "2," it is not. See

28    Motion at 8:7.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 | transferred those parcels in June 2005 (and the parties believed that such transfers had

2 | been effectuated), not a few weeks ago.

3 |         On June 3, 2005, the Debtor made a distribution in kind of approximately

4 | 5% of its developable land (the "Willow Draw Property") to its members, Michael A. Baker

5 | ("Baker")[16] and Wasatch Capital Corporation ("Wasatch"). (See Rauch Decl. for a further

6 | description of the subsequent transactions.)

7 |         ASC Utah, Inc., understood and was aware that the Willow Draw Property

8 | had been transferred by the Debtor and was now owned by other entities affiliated with

9 | Griswold. In or around September 2006, Clark K. Taylor, counsel for the Movant,

10 | prepared a proposed purchase agreement for property owned by the Debtor. That

11 | proposed agreement, in the definition of "Land" appearing in section 1.13 of that

12 | proposed agreement, specifically excludes the Willow Draw Property because it was

13 | known that the Debtor was no longer the owner of that Property, stating "[t]he land does

14 | not include a development parcel near the resort base which is expected to be platted

15 | into 35 single family lots (the "35 Lots"), which parcel is more particularly described in

16 | Exhibit A hereto." (This proposed agreement and an email message dated October 19,

17 | 2006, from a representative of the lessee under the Ground Lease is attached to the

18 | Griswold Decl. as Exh. "9" and is incorporated herein by this reference.) Further, on

19 | November 1, 2006, the lessee's representative sent an email message to the Debtor's

20 | counsel with respect to the lessee's $100 million offer for property owned by the Debtor

21 | specifically acknowledging that the Willow Draw Property was not owned by the Debtor

22 | and rather was owned by affiliates of Griswold, stating in an email message "[b]ringing

23 | this saga to a close in a high spirited way would be good for all, and not the least the

24 | users of the resort of which one would be Kenny with the 35 lots." (See this email

25 | message, attached as Exh. "10" to the Griswold Decl. and incorporated herein by this

26 | reference, and the accompanying letter agreement for acquisition of land and assets of

27 |

28 | [16]   Baker is the principal of the Debtor's member, MAB Resort Holdings, LLC.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   the Debtor that was prepared by the Movant's counsel, Clark K. Taylor, and written so

2   that it is addressed to Taylor himself that accompanied subject email message and is

3   also attached to the Griswold Decl. as part of Exh. "10;" also see Rauch Decl.)  In sum,

4   there was no improper transfer or concealment of any asset and the Movant knows it.[17]

5              **b.      The Debtor Has Not Engaged In Any Vexatious Or**

6                       **Outrageous Conduct In The Utah Action**

7              The Movant also claims that the Debtor engaged in a host of alleged bad

8   faith tactics in the Utah Action.  As more particularly set forth in the accompanying

9   declaration of David Wahlquist, the Debtor's engaged in no such conduct.  The Debtor

10  pursued motions and strategies that were well within their rights, supported by the facts

11  and law, and filed for good faith.  None of the actions were outrageous nor intended to

12  vex any party.

13             **2.      The Debtor Did Not File This Case Solely To Avoid An Adverse**

14                      **Judgment, But Rather To Maximize The Value Of Its Substantial**

15                      **Assets For The Benefit Of All Creditors**

16             The Movant contends that the Debtor "lack[s] any meaningful assets, has

17  "no ongoing business" to reorganize (Motion at 17:4-5) and filed this bankruptcy case for

18  "the sole reason" to "once again delay and postpone the conclusion of the Utah State

19  Court Action and avoid judgment."  Motion at 16:24-27.  This is false.

20             The Debtor understands that Movant may be frustrated by the Debtor's

21  bankruptcy filing (as it impedes Movant's ability to gain a preference over legitimate

22  creditors).  Yet, it  is important to underscore that filing a bankruptcy reorganization case

23  that delays or frustrates creditors alone does not translate to bad faith.  As one court aptly

24  stated in cautioning that the good faith analysis be conducted with care:

25  _____

[17]    In any event, even if the Movant's claim had any merit, the filing of this bankruptcy case
26  provides more than sufficient protection to the Movant for any "improper" or "fraudulent" transfer
of assets.  First, this Court now has exclusive jurisdiction over the Debtor's property and the
27  Debtor may not transfer any assets to any one absent Court approval.  Second, to the extent any
transfers were or are effectuated with any fraud, the Bankruptcy Code provides an ample arsenal
28  of remedies for such actions.

1    Filing a bankruptcy petition with the intent to frustrate creditors
     does not by itself establish an absence of intent to seek
2    rehabilitation.  Indeed, because a major purpose behind our
     bankruptcy laws is to afford a debtor some breathing room
3    from creditors, it is almost inevitable that creditors will, in
     some sense, be "frustrated" when their debtor files a
4    bankruptcy petition.  In reality, there is a considerable gap
     between delaying creditors, on the eve of foreclosure, and the
5    concept of abuse of judicial purpose.

6   Baker v. Latham Sparrow brook Assocs. (In re Cohoes Indust. Terminal, Inc.), 931 F.2d

7   222, 228 (2nd Cir. 1991) (*citations omitted*) (finding chapter 11 filing was not frivolous).

8   See also In re James Wilson Assocs., 965 F.2d 160, 170 (7th Cir. 1992) (acknowledging

9   that "[i]t is not bad faith to seek to gain an advantage from declaring bankruptcy—why

10  else would one declare it?"); In re 68 West 127 Street, LLC, 285 B.R. 838, 844 (Bankr.

11  S.D.N.Y. 2002) (finding case not filed in bad faith even though one reason for filing was

12  to avoid impending foreclosure); Marion, 108 B.R. at 223 ("Nor is bad faith necessarily to

13  be assumed where the debtor files for bankruptcy on the eve of foreclosure").  Therefore,

14  while it may be true that the special verdict was one factor in the Debtor's filing, that

15  alone is not sufficient to dismiss this case.

16          In any event, the Debtor has substantial assets and intends and has the

17  ability to reorganize.  In particular, the Debtor has at least the following assets, each of

18  which, as discussed above, could be sold, refinanced, developed or otherwise monetized

19  for the benefit of the Debtor's valid creditors.

20          (a)    100 Units — Second Amendment to Ground Lease

21          (b)    Fourplex F8 Development

22          (c)    Rights With Respect to Island in the Bahamas

23          (d)    Potential Assignment of Right to Receive Rent

24          (e)    Million Dollar Letter

25          (f)    Option Rights

26          (g)    Red Pine Road Infrastructure Rights

27          (h)    Fee Simple Rights

28          (i)    Community Water Connection Rights

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1          (j)    Claims for Contribution Against Neighboring Property Owners

2                 Now Subject to Arbitration

3          (k)    Termination of Ground Lease

4          (l)    35 Lots — Willow Draw Property — to be contributed to Debtor

5                 or developed with proceeds to be contributed to the Debtor for

6                 use in the Debtor's plan of reorganization

7          Movant's reliance on the alleged fact that the Debtor has no employees

8    also is unavailing. See Motion at 17:4. Many courts have refused to find that a filing was

9    in bad faith (whether in the context of a motion to dismiss or motion for relief from stay),

10   even when the debtor had no employees. For example, in In re One Fourth Street North,

11   Ltd., 105 B.R. 106, 108 (Bankr. M.D. Fla. 1989), the court denied a motion to dismiss a

12   bankruptcy case even though the debtor had "very few employees other than the

13   principals and few unsecured creditors with relatively small claims." Similarly, in In re

14   Sletteland, 260 B.R. 657, 666 (Bankr. S.D.N.Y. 2001), the court denied a motion to

15   dismiss notwithstanding the fact that the debtor had no employees. See also 68 West

16   127 Street, 285 B.R. at 842-44 (denying motion for relief from stay on the grounds of bad

17   faith even though the debtor had no income, no employees, and its sole asset was an

18   empty and derelict building purchased before a scheduled foreclosure).

19         In sum, so long as a debtor has real assets and the intent and reasonable

20   ability to reorganize, there can be no bad faith. This is the case here. As demonstrated

21   above, the Debtor has considerable assets and the Debtor intends to maximize the value

22   of those assets for its creditors. The mere fact that the Debtor's filing may have

23   frustrated Movant's objective of jumping ahead of the Debtor's creditors, is far from

24   sufficient to warrant dismissal of this case.

25         3.    The Debtor Did Not File This Case To Forum Shop Or Re-

26               Litigate The Utah Action In This Court

27         The Movant contends that the Debtor filed this bankruptcy case to judge-

28   shop and re-litigate the matters in the Utah Action. Motion at 16:15-16; 20:10-12. This

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  contention is incorrect.  On May 10, 2011 (one day after this bankruptcy case was filed

2  and three days before the present Motion was filed), through counsel, the Movant

3  inquired as to whether the Debtor would stipulate for limited relief from stay to proceed

4  with the Utah Action.  The Debtor advised Movant that the Debtor was amenable to such

5  a stipulation, subject to Movant clarifying what actions it proposed to exclude from the

6  scope of the automatic stay.  Despite the Debtor's counsel's follow-up, the Movant never

7  provided any such clarification.  Instead, the Movant filed the instant Motion.  Indeed, at

8  the hearing conducted on May 9, 2011 in the Utah Action, Mr. Wahlquist also advised the

9  Court and counsel to ASCU that he understood the Debtor would be amenable to a

10  stipulation to lift stay.  See Wahlquist Declaration.

11            Even worse, not only does Movant now fail to disclose to the Court that the

12  Debtor was amenable to stipulating to limited relief from stay regarding the Utah Action,

13  but also claims that the Debtor is using its bankruptcy filing to re-litigate the Utah Action.

14  If the Debtor filed this case as a forum shopping maneuver, why would it consider

15  stipulating to relief from stay to go back to the Utah State Court?

16            In fact, the Debtor is prepared to file its own motion for appropriate relief

17  from stay to allow the Utah Action and any related appeals to proceed.  As the Movant

18  knows, there are two phases to the Utah Action.  ASC Utah, Inc. obtained its special

19  verdict in the first phase of the case – the only one that has proceeded to trial so far.  The

20  second phase trial, which has yet to commence, relates to the Debtor's claims against

21  ASC Utah, Inc. – claims that could mitigate or completely eliminate the $55 million

22  verdict.  The Debtor has no intention of asking this Court to re-litigate the trial that has

23  occurred.

24            **4.    The Debtor Has Other Creditors Asserting Sizeable Claims**

25            As set forth above, the creditors listed in the Debtor's petition are legitimate.

26  For instance, the Movant claims that DA Osguthorpe the second largest unsecured

27  creditor, "does not have any claim even pending against the Debtor."  This is not true.  As

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1 | the Movant is aware, Osguthorpe is a party to the Utah Action and has asserted claims

2 | against the Debtor that remain outstanding.

3 |     As discussed above, the Debtor has multiple creditors asserting large

4 | claims.

5 |     **5.**    **Venue Of This Case Is Proper And Appropriate**

6 |     The Movant devotes several pages of its Motion to an effort to convince this

7 | Court that this case does not belong in California. <u>See</u> Motion at Section II.C. The

8 | Movant advances three arguments: (i) that the Debtor is a Utah limited liability company

9 | with property in Utah (Motion at 12:13-15); (ii) that the Debtor's principals, Kenneth

10 | Griswold and Michael Baker, are not residents of California (Motion at 12:15-13:8); and

11 | (iii) that the Debtor does not have creditors in California (Motion at 13:9-18). None has

12 | merit.

13 |     Any inquiry regarding the propriety of venue must begin with the precept

14 | that "[t]he law favors the venue selection of the debtor." <u>In re Fontainebleau Las Vegas</u>

15 | <u>Holdings, LLC</u>, 2009 Bankr. LEXIS 3529, *2 (Bankr. S.D. Fla. Oct. 26, 2009).[18] The

16 | Movant, therefore, bears a heavy burden in calling the Debtor's choice of venue into

17 | question.

18 |     It is true that the Debtor is a Utah limited liability company that owns

19 | property in Utah. But a company's place of incorporation and the location of its property

20 | does not determine this matter. In deciding whether venue is appropriate, courts

21 | repeatedly have held that more important than the location of a debtor's assets (even its

22 | principal asset) is the location of its "nerve center:"

23 |

24 |         [T]he "most important, consequential, or influential," place
were a corporation or partnership does its business is likely to

25 |         be the place where its management decisions are made. . . .
In determining where venue is proper in such a case, courts

26 |

27 | [18] The Debtor recognizes that the Movant is not seeking a change of venue at this time. <u>See</u>
Motion at 13, n.4. The Movant nevertheless attacks and has placed at issue the Debtor's

28 | commencement of this reorganization case in California.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  therefore look to where those persons who will make those
key decisions are located.

In re Peachtree Lane Assocs., Ltd., 150 F.3d 788, 795 (7th Cir. 1998) (citations omitted).

See also Fontainebleau, 2009 Bankr. LEXIS 3529 at *5 (agreeing that "the location of the

decision-making authority is more appropriate for venue purposes in the context of

financial restructuring"); In re Laguardia Assocs., L.P., 316 B.R. 832, 837-38 (Bankr. E.D.

Penn. 2004) (noting that "[t]he nerve center test appears to represent the majority view").

Here, the Debtor's "nerve center" is in California.  Mr. Griswold is the

Debtor's managing member.  He is the "nerve center" of the Debtor.  Mr. Griswold makes

(and will continue to make) the essential decisions governing the Debtor.  Those

management decisions relate to, among other things, claims held by the Debtor, claims

held against the Debtor, the Debtor's options for monetizing its assets, the Debtor's

dealings with creditors and other parties, the Debtor's alternatives for reorganization, and

other significant matters.

Mr. Griswold is a California resident.  The Movant strives to persuade this

Court otherwise.  The fact remains, however, that Mr. Griswold lives and works in

California.  The Movant clearly concedes this much.  See Motion at 13:6-7 (referring to

"Mr. Griswold's personal home address in California").  The Movant has known this for

several years.

In an opinion denying ASC Utah, Inc.'s motion to dismiss the Debtor's

complaint pending in that court on grounds of lack of diversity jurisdiction, the Utah

District Court was unequivocal:

The Court finds that based on the clear and convincing
evidence cited by Mr. Griswold, he was a citizen of California
on the date this suit was filed. The Court is not persuaded by
Defendants' reliance on outdated facts and other evidence
that Wolf Mountain adequately explains in its brief.

See "Memorandum of Decision of Order Denying Motion to Dismiss" (Exh. 1" to Griswold

Decl.) at 4-5.

1    Lastly, the Movant contends that the Debtor "spuriously lists" certain creditors as

2    being in California. The Movant specifically singles out the Debtor's identification of Park

3    City West & Associates, one of the Debtor's 20 largest unsecured creditors ("Park City")

4    "as having a mailing address in California . . . when the Debtor knows full well that the

5    entity is based in a [sic] Utah." Motion at 13:15-18. The Debtor does not know where the

6    Movant gets its information; it certainly does not substantiate this allegation with any

7    evidence. But the Debtor does know what the Utah Secretary of State and the California

8    Secretary of State publicize about Park City – that it is a California limited partnership,

9    located in California at the address identified in the Debtor's petition papers, and with an

10    agent for service of process in California. (See Exh. "14" to Griswold Decl.)

11    Based on the foregoing, the Movant's complaints regarding the venue of this case

12    in California should be rejected.

13    **6.    Summary**

14    In sum, the Debtor has real assets, real creditors, the intention and ability to

15    reorganize and no intention of re-litigating any of the matters subject to the Utah Action in

16    this Court. As a result, there are no grounds to support the drastic remedy of dismissal

17    under section 1112(b).

18    **C.    Dismissal Of This Case Is Not Appropriate Under Section 305(a)**

19    **1.    Introduction**

20    Section 305(a) similarly provides, in relevant part, as follows:

21    The court, after notice and a hearing, may dismiss a case
    under this title, or may suspend all proceedings in a case
22    under this title, at any time if [t]he interests of creditors and the
    debtor would be better served by such dismissal or
23    suspension.

24    11 U.S.C. § 305(a). Although the Movant cites section 305(a) as a basis for dismissal,

25    the Movant provides nothing by way of any analysis under this section. Even if Movant

26    did, it would lack merit.

27    As is the case under section 1112(b), dismissal under section 305(a) is "an

28    extraordinary remedy." In re Eastman, 188 B.R. 621, 624 (9th Cir. B.A.P. 1995) (citations

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  omitted).  This is especially true since section 305(c) significantly limits appellate review

2  of an order under section 305(a), effectively precluding consideration by the Supreme

3  Court and the Court of Appeals.  See In re Corino, 191 B.R. 283 (Bankr. N.D.N.Y. 1995);

4  In re Luftek, Inc., 6 B.R. 539 (Bankr. E.D.N.Y. 1980) (court recognized that there is an

5  inherent risk to the system of jurisprudence in any Act of Congress which gives the court

6  such broad powers to refuse jurisdiction over a case).

7          The Ninth Circuit Bankruptcy Appellate Panel has held that "dismissal is

8  appropriate under section 305(a)(1) only in the situation where the court finds that both

9  'creditors and the debtor' would be 'better served' by a dismissal:"

10

11          As the statutory language and legislative history demonstrate,
           the test under section 305(a) is not whether dismissal would

12          give rise to a substantial prejudice to the debtor.  Nor is the
           test whether a balancing process favors dismissal.  Rather,

13          the test is whether both the debtor and the creditors would be
           'better served' by a dismissal.

14  Eastman, 188 B.R. at 624-25.  See also In re Martin-Trigona, 35 B.R. 596 (Bankr.

15  S.D.N.Y. 1983); In re RAI Marketing Services, Inc., 20 B.R. 943 (Bankr. D. Kan. 1982); In

16  re Mazzocone, 200 B.R. 568 (E.D. Pa. 1996).

17          2.    **Both The Debtor And Its Creditors Would Be Substantially**

18                **Harmed, Not Better Served, By Dismissal**

19          For all of the reasons set forth above and militating against dismissal under

20  section 1112(b), dismissal under section 305(a) is not warranted.  In brief, as discussed

21  above, this case is not filed merely as a result of a two-party dispute between the Movant

22  (or, more appropriately, ASC Utah, Inc.) and the Debtor, but rather, to maximize the value

23  of the Debtor's many assets for the benefit of the Debtor's creditors.  Dismissing this case

24  and granting the Movant free reign to seize the Debtor's assets will only serve the

25  interests of Movant alone to the utter detriment of the estate and creditors.

26  D.    **The Cases Upon Which The Movant Relies Are Distinguishable Or**

27          **Otherwise Do Not Support Dismissal Of This Chapter 11 Bankruptcy**

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    The Movant seeks dismissal of this case under both sections 305(a) and

2   1112(b) of the Bankruptcy Code.  For all the reasons discussed above, the true facts do

3   not support the Movant's request.  Neither do the cases the Movant cites.

4    The Movant's legal authority for dismissal of this bankruptcy case under

5   section 305(a) begins and ends with a citation to that section.  In fact, like the Motion

6   itself, none of the cases in the Motion analyze or even address dismissal under section

7   305(a), and most do not even mention the section at all.  See, e.g., Marsch v. Marsch (In

8   re Marsch), 36 F.3d 825, 828, n.1 (9th Cir. 1994) (cited by the Movant) (noting that "[t]he

9   11 U.S.C. § 305(a)(1) issues is not before us on appeal") (*emphasis added*); In re

10   Boynton, 184 B.R. 580 (Bankr. S.D. Cal. 1995) (addressing dismissal under section

11   1112(b) only); Idaho v. Arnold (In re Arnold), 806 F.2d 937 (9th Cir. 1986) (no mention of

12   section 305(a) at all); Chu v. Syntron Bioresearch, Inc. (In re Chu), 253 B.R. 92 (S.D. Cal.

13   2000) (no mention of section 305(a) at all); In re Sparklet Devices, Inc., 154 B.R. 544

14   (Bankr. E.D. Mo. 1993) (same); In re Byrd, 172 B.R. 970 (Bankr. W.D. Wash. 1994)

15   (same); In re Harvey, 101 B.R. 250 (Bankr. D. Nev. 1989) (same).

16    Although the cases in the Motion discuss "bad faith" filings in the context of

17   section 1112(b) (or section 362(d)(1)), they are readily distinguishable from the present

18   case.  A few examples follow.

19    The Movant cites In re Arnold, 806 F.2d 937 (9th Cir. 1986).  That case, in

20   fact, supports denial of the Motion.  In that case, the district court granted a creditor relief

21   from stay on, among other grounds, the debtor's bad faith filing.  The Ninth Circuit Court

22   of Appeals reversed:

23    Good faith is lacking only when the debtor's actions are a
   clear abuse of the bankruptcy process. [*Citation omitted*].
24    Here, there is no abuse of the bankruptcy process.  The
   Arnolds have used the land productively to repay creditors
25    while the stay is in place.  There is no showing of bad faith.

26   Id. at 939.  So, too, here.  As discussed above, the Debtor intends to monetize its assets

27   productively to provide an appropriate and equitable form of recovery to its creditors

28   through a plan of reorganization.  The existence of the automatic stay during this time to

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   preclude creditors from jumping ahead of the line is an essential to achievement of that

2   goal.

3          The facts of the present case much more closely parallel those of <u>In re J.</u>

4   <u>Howard Marshall, III, and Ilene O. Marshall</u>, 403 B.R. 668, 691 (Bankr. C.D. Cal. 2009)

5   ("Giving debtors the opportunity to reorganize in response to impending financial distress

6   is the purpose of chapter 11"), and of <u>In re Dilling</u>, 322 B.R. 353 (Bankr. N.D. Ill. 2005).

7   In both these cases, the courts denied motions to dismiss petitions that were filed in lieu

8   of the posting of a supersedeas bond where the debtors' were unable to post bonds due

9   to a lack of liquidity.   <u>See In re J. Howard Marshall, III, and Ilene O. Marshall</u>, 403 B.R. at

10  691; <u>In re Dilling</u>. 322 B.R. at 355-56.

11         In re J. Howard Marshall, III, and Ilene O. Marshall, the debtors filed their

12  chapter 11 petition in anticipation of a court order that would have required them to

13  transfer assets to satisfy a $12 million judgment which they had timely appealed.  <u>In re J.</u>

14  <u>Howard Marshall, III, and Ilene O. Marshall</u>, 403 B.R. at 692.   The debtors' judgment

15  creditor moved to dismiss the case for cause alleging, *inter alia*, that the debtors' filing to

16  avoid the posting of a supersedeas bond constituted bad faith.  <u>Id.</u> at 689.   The court

17  stated that, despite the fact that the debtors had net assets worth roughly $22 million,

18  "[t]he large Fraud Judgment in this case supports a denial of a motion to dismiss on bad

19  faith grounds. . . . [T]he appeal bond would have cost Howard and Ilene nearly $18

20  million and . . . they did not have the liquid assets to post a bond of this size." <u>Id.</u> at 691.

21         Similarly, in <u>In re Dilling</u>, the debtor sought to appeal a $2 million state court

22  judgment.   <u>In re Dilling</u>, 322 B.R. at 355.   Because of her inability to post a supersedeas

23  bond the debtor was ultimately forced to file chapter 11.  <u>Id.</u>   The debtor's judgment

24  creditor moved to dismiss the case for cause claiming, *inter alia*, that the debtors' filing to

25  avoid the posting of a supersedeas bond constituted bad faith.  <u>Id.</u>   The court denied the

26  creditor's motion finding that if the case were dismissed, the debtors assets would likely

27  be liquidated sooner than an appeal could be resolved and "may result in rapid liquidation

28  of illiquid assets that will not maximize their value" and further stated that "[c]ertain assets

1  of Debtor are worth more if liquidated in an orderly and controlled manner rather than a

2  forced sale" Id. at 361 (internal citations omitted).  The court expressly stated that,

3            There is little doubt that Dilling's motivation in filing this case
            was prompted by her inability to post an appeal bond.
4            Although bankruptcy cases have been dismissed when the
            debtor was able to post such a bond but elected not to do,
5            that is not the situation here.  Dilling is making every effort to
            post security during her appeal but so far remains
6            unsuccessful.  It is generally accepted that a bankruptcy case
            will not be dismissed even when used as a substitute for an
7            appeal bond, when the debtor has made diligent efforts to
            post such a bond but failed.
8
            Id. at 362, citing N.R. Guaranteed Retirement, Inc., 112 B.R. 263 (Bankr.
9  N.D. Ill. 1990).

10          Despite ASCU's contentions to the contrary, the Debtor did not file this case

11  as a "mere litigation tactic."  As with the debtors in In re J. Howard Marshall, III, and

12  Ilene O. Marshall and In re Dilling, the Debtor's filing was motivated by an inability to post

13  a supersedeas bond and not by an intent to avoid obligations that it could otherwise

14  afford.  Additionally, the filing of this case is intended to prevent ASC Utah, Inc. from

15  obtaining a preference over other creditors, maintain the status quo of creditor priority

16  rights, and to allow the Debtor to present a plan designed to maximize the value of the

17  estate.  Here, the Debtor does not currently have the liquidity available to it to post a

18  bond large enough to prevent ASCU from executing on the judgment pending its pursuit

19  of post-judgment motions, and a timely appeal of the judgment.  This could would lead to

20  the untenable result that the Debtor's tenant could begin executing its judgment

21  notwithstanding the appeal, by forcing a sale of the land that it leases from the Debtor.

22          It is widely accepted that "filing a chapter 11 case because of the crushing

23  weight of a judgment is not unusual" and "[g]iving debtors the opportunity to reorganize in

24  response to impending financial distress is the purpose of chapter 11." In re J. Howard

25  Marshall, III, and Ilene O. Marshall, 403 B.R. at 691.  See In re McStay, 82 B.R. 763, 768

26  (Bankr. E.D. Pa. 1988) ("In and of itself, filing to frustrate the execution efforts of one

27  particular creditor is not an illegitimate bankruptcy purpose. Nothing in the Code

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    precludes bankruptcy as an alternative for those with few or even one creditor.   It is quite

2    common and not inappropriate for a debtor to use chapter 11 to obtain a respite from a

3    creditor or creditors aggressively seeking to collect on a debt, even when execution is

4    imminent, provided that financial rehabilitation is possible. Indeed, that is one of the

5    underlying purposes which the bankruptcy process, by virtue of the automatic stay, was

6    meant to serve.") (*internal citations omitted*).

7          Chu v. Syntron Bioresearch, Inc. (In re Chu), 253 B.R. 92 (S.D. Cal. 2000),

8    also does not help the Movant.  In that case, the bankruptcy court dismissed the case on

9    bad faith grounds.  In affirming the bankruptcy court's decision, the district court found

10   that the debtor had "only one significant creditor," "could not propose a plan of

11   reorganization with any reasonable likelihood of success" and that the case was filed "as

12   a litigation tactic."  Id. at 95-96.  This is not the situation here.  First, the Debtor has plenty

13   of significant creditors.  Second, the Debtor has viable reorganization prospects,

14   especially given its substantial assets, and should be provided a meaningful opportunity

15   to pursue them.  Finally, as detailed above, the filing of this bankruptcy case is not a

16   "litigation tactic."  As the Debtor has stated throughout this brief, the Debtor is amenable

17   to stipulate to an appropriate form of limited relief from stay to allow the Utah Action to

18   proceed.

19          Finally, in Mueller v. Sparklet Devices, Inc. (In re Sparklet Devices, Inc.),

20   154 B.R. 544 (Bankr. E.D. Mo. 1993), a state court litigant sought relief from stay to

21   complete the debtor's compliance with a pre-petition state court order requiring the

22   debtor's specific performance of a purchase agreement.  See id. at 545-46.  The

23   bankruptcy court granted relief from stay on grounds that the bankruptcy petition was

24   filed in bad faith.  The bad faith finding, however, was premised upon facts completely

25   disparate from those at issue here. Most notably, in that case, the debtor testified that,

26   pre-petition, it shut down its business altogether:

27            In the instant case, the Debtor ceased all business operations
             pre-petition.  The Debtor voluntarily discharged its employees,
28           voluntarily surrendered the deed to its premises, voluntarily

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

issued a bill of sale for other business assets, voluntarily
surrendered possession of the premises and voluntarily
authorized a corporate resolution authorizing and directing
each of these actions. Because each of these voluntary acts
divested the Debtor of its means for reorganization or orderly
liquidation, these acts are inconsistent with Debtor's assertion
that it is filing bankruptcy in lieu of a supersedeas bond in
order to protect its business interests.

Id. at 549. This is far cry from the facts present in this case. Here, the Debtor continues

to have assets with significant value and its business involves deriving value from its

assets, has not surrendered possession of any of its assets or otherwise took any actions

to effectively shut down and liquidate. The Debtor intends to pursue reorganization and

dismissal of this case will only further the Movant's interests of liquidating the Debtor's

assets for its sole benefit.

In sum, like the real facts, the legal authority upon which the Movant relies

does not support dismissal of this case.

**E.    No Refiling Bar Should Be Imposed In The Event This Case Is**
       **Dismissed**

Citing sections 105(a) and 349(a) of the Bankruptcy Code, in the event this

case is dismissed, the Movant seeks to preclude the Debtor from re-filing any bankruptcy

petition for 90 days. For the reasons set forth above, no "cause" exists to warrant

dismissal at all, let alone coupled with an injunction against re-filing.

Courts consistently have held that a re-filing bar should be imposed only

under the most severe of circumstances. See, e.g., Colonial Auto Ctr. v. Tomlin (In re

Tomlin), 105 F.3d 933, 937 (4th Cir. 1997) ("In any court, a dismissal order that bars the

subsequent litigation is a severe sanction warranted only by egregious misconduct."); In

re Campbell, 2007 Bankr. LEXIS 4159, *17 (Bankr. N.D. Va. Dec. 18, 2007) ("Dismissing

a case with prejudice, or issuing an injunction against future filings for a period of time, is

a severe sanction."). At least one court has referred to a dismissal with a re-filing bar as

the "capital punishment of bankruptcy." See In re Merrill, 192 B.R. 245, 253 (Bankr. D.

Colo. 1995). No such severe sanction is warranted here.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1     Neither of the two cases upon which the Movant relies supports imposing a

2   re-filing bar against the Debtor.  In Casse v. Key Bank National Association (In re Casse),

3   198 F.3d 327 (2nd Cir. 1999), the court issued an injunction only after the debtor

4   effectuated "a series of filings under the Bankruptcy Code, whose sole and transparent

5   purpose was to frustrate Key Bank's foreclosure proceedings."  Id. at 329.  Contrary to

6   the debtor in Casse, this is the first time the Debtor has sought bankruptcy protection and

7   nothing establishes that its "sole and transparent purpose" is to improperly "frustrate" the

8   Movant.

9     Leavitt v. Soto (In re Leavitt), 209 B.R. 935, 939 (B.A.P. 9th Cir. 1997), the

10  other case the Movant cites, similarly is inapposite.  In that case, the panel affirmed an

11  order dismissing a chapter 13 case with a bar to re-filing when the debtor concealed facts

12  from the bankruptcy court, filed a plan that proposed to make minimal payments, below

13  the debtor's disposable income, the payments proposed were not found to be equitable

14  or intended to repay creditors.  See id. at 940.  There is no evidence that the Debtor has

15  concealed any facts from this Court (quite the contrary – the Movant has concealed many

16  facts) or that the Debtor intends to propose a plan that does not treat its creditors

17  equitably.

18    Rather than identifying any "egregious" conduct warranting a re-filing bar,

19  the Movant bases its request on the faulty premise that the Debtor is using this case as a

20  means to forum shop and "buy more time to avoid Judge Hilder."  Motion at 18:20-25.

21  Again, there is no merit to this claim; the Debtor already advised the Movant that it would

22  consider stipulating to limited relief from stay to proceed with the Utah Action.

23    Barring the Debtor from re-filing (assuming this case is dismissed at all)

24  only would facilitate the Movant's continuing efforts to leap frog ahead of other creditors.

25  There is no greater evidence of this than the fact that the Movant has requested that the

26  bar remain in place for 90 days – just enough time to place the Movant's actions to

27  snatch assets outside the preference period.

28

1    Based on the foregoing, in the event the Court determines to dismiss this

2    case (which it should not), the dismissal should not be combined with a bar to re-filing.

3    **F.    Any Relief From Stay Order Should Be Appropriately Limited In Scope**

4    **And Fashioned To Preclude The Movant From Enforcing Any**

5    **Judgment Against Estate Property Or Obtaining Lien Or Priority**

6    **Rights Ahead Of Other Creditors**

7    As an alternative, the Movant seeks relief from the automatic stay to

8    proceed with the Utah Action.  The Debtor previously advised the Movant that the Debtor

9    could be amenable to stipulating to such relief subject to the parties' agreement regarding

10   the parameters and the Movant decided not to move forward to work out a Stipulation.

11   In any event, the Debtor remains willing to stipulate to limited relief from stay, but not to

12   the extent the Movant suggests.  In addition to continuing the Utah Action to final

13   judgment, the Movant appears to seek permission to enforce any such judgment.

14

15         Further, if the Court is not inclined to dismiss this chapter 11
           case with a bar against refilling [sic], ASCU urgently needs to
16         return to the Utah State Court to seek an extension of the
           prejudgment writ of attachment and restraining order to
17         prevent a likely further attempt by the Debtor and its insiders
           to transfer and hide the Debtor's assets.
18

19   Motion at 20:12-16.  There are many problems with this statement.

20   First, there has been no "attempt by the Debtor and its insiders to transfer

     and hide the Debtor's assets."  The inaccuracy of this statement is shown through the
21
     Declaration of Bradley Rauch submitted with this Opposition.
22
     Second, although the Debtor has not transferred or hidden assets in the
23
     first place, the pendency of this bankruptcy case by itself should provide sufficient
24
     assurance to the Movant that there will be no transfer or hiding of the Debtor's assets.
25
     Extension of a state court prejudgment writ of attachment is unnecessary and
26
     inappropriate.
27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

AHAMI\ 718436.1                                35

1           In sum, the Debtor is willing to consider an appropriate and fair form of relief

2    from stay that allows the parties' to continue with the Utah Action, yet precludes

3    attachment or execution of any judgment against the estate.

4

5    DATED:  May 17, 2011           Respectfully submitted,

6                              **Sulmeyer**Kupetz
                          A Professional Corporation

7

8

9                              By: _____
                              David S. Kupetz

10                                 (Proposed) Attorneys for Debtor and
                              Debtor in Possession

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California  90071-1406

A true and correct copy of the foregoing document described as **"OPPOSITION OF WOLF MOUNTAIN RESORTS, L.C., DEBTOR AND DEBTOR IN POSSESSION, TO ASC UTAH, LLC'S 'EMERGENCY MOTION FOR ORDER: (1) DISMISSING THE CHAPTER 11 CASE PURSUANT TO SECTIONS 305(a) AND 1112(b) OF THE BANKRUPTCY CODE; (2) BARRING THE DEBTOR FROM REFILING FOR BANKRUPTCY FOR 90 DAYS PURSUANT TO SECTIONS 105(a) AND 349(a) OF THE BANKRUPTCY CODE; OR (3) IN THE ALTERNATIVE, FOR ORDER FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362'"** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On May 17, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

> Russell Clementson — OUST

> Mark S. Horoupian — Debtor

> United States Trustee (LA)
> Scott H. Yun — ASC Utah, LLC

russell.clementson@usdoj.gov
mhoroupian@sulmeyerlaw.com
kfox@sulmeyerlaw.com
ustpregion16.la.ecf@usdoj.gov
syun@stutman.com

☐ Service Information continued on attached page.

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On May 17, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service Information continued on attached page.

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served):  Pursuant to F.R.Civ.P.5 and/or controlling LBR, on May 17, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery to the judge will be completed no later than 24 hours after the document is filed.*

**VIA MESSENGER**

**The Honorable Peter Carroll, U.S. Bankruptcy Court
255 E. Temple St., Suite 1534, Los Angeles, CA  90012-3332**

**Russell Clementson, Esq., Office of the U.S. Trustee
725 S. Figueroa St., 26th Floor, Los Angeles, CA  90017**

☒ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 17, 2011 | Debbie Perez | /s/ Debbie Perez |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
KFOX\ 718577.1

**F 9013-3.1.PROOF.SERVICE**

---

**ADDITIONAL SERVICE INFORMATION** (if needed):

## SERVED VIA E-MAIL

> ➢ Gary E. Klausner — ASC Utah, LLC        gklausner@stutman.com
> ➢ Clark K. Taylor — ASC Utah, LLC        ctaylor@vancott.com